[Civ. No. 2072. Third Appellate District.—April 30, 1920.]

A. O. DAMAN, Appellant, v. JOHN WESLEY HUNT, Jr., Defendant; H. W. REYNOLDS, Assignee, etc., Respondent.

[1] INSOLVENCY ACT OF 1880—JURISDICTION OF SUPERIOR COURT.—A superior court, in proceedings in insolvency under the Insolvency Act of 1880, exercises a special or limited jurisdiction; and everything required by that act to give said court the jurisdiction to hear and determine the same or to act in the proceedings must be made affirmatively to appear in the record. If any jurisdictional fact appears, upon the face of the record, to be wanting, the court is wholly without jurisdiction to act or to make any valid order or adjudication in the proceeding.

[2] ID.—ACTION TO QUIET TITLE—SUFFICIENCY OF COMPLAINT.—In this action to quiet title, the amended complaint in intervention by the substituted assignee in the matter of an insolvent debtor, under the Insolvency Act of 1880, stated a cause of action, and the general demurrer thereto was properly overruled.

[3] ID.—APPOINTMENT AND QUALIFICATION OF ASSIGNEE—ADMISSION BY FAILURE TO DENY.—The amended complaint in intervention having alleged the appointment and qualification of the assignee, and that allegation not having been denied, it was in legal effect admitted.

[4] ID.—VACANCY IN OFFICE—CONVEYANCE OF PROPERTY TO SUCCESSOR. Where, after the property of the insolvent debtor was conveyed to the assignee "and to his successor and successors in office," the office of assignee became vacant and such vacancy was regularly supplied by the appointment of another to discharge the duties of the office, it was not necessary or requisite that there should be a specific assignment or conveyance of the property of the insolvent's estate to such successor or successors.

[5] ID.—DISMISSAL OF PROCEEDINGS — ABSENCE OF CONSENT — VOID ORDER.—An order dismissing insolvency proceedings which shows upon its face that it was made without the consent of all parties interested in or affected thereby is void.

[6] ID.—POWER TO SET ASIDE VOID ORDER.—An order dismissing insolvency proceedings without the consent of all parties interested in or affected thereby being void, a court making such an order may vacate and set aside the same.

[7] ID.—CONVEYANCE OF PROPERTY TO ASSIGNEE—SUBSEQUENT DEED BY INSOLVENT—VALIDITY OF.—After the property of the insolvent debtor has been conveyed to the assignee and to his successor and successors in office, a deed of conveyance of the property by the insolvent debtor to a stranger to the insolvency proceedings is

void, notwithstanding that prior to such attempted conveyance the court, acting in excess of its jurisdiction, ordered the insolvency proceedings dismissed.

[8] ID.—FAILURE OF ASSIGNEE TO FILE BOND—VALIDITY OF CONVEY-ANCE BY.—Where the original assignee, in proceedings in insolvency under the Insolvency Act of 1880, dies and a successor is regularly appointed by the court but he fails to file a bond as assignee, as required by the act, he is without authority to exercise the duties of his office, and a conveyance by him of the property of the insolvent debtor which was conveyed to the original assignee, is void.

[9] ID.—DELAY IN PROSECUTION OF PROCEEDINGS—ABANDONMENT OF PROPERTY.—After the real property of the insolvent debtor is conveyed to the assignee, the fact that the administration of the estate of the insolvent remains in abeyance or is dormant because the proceedings in insolvency are not promptly prosecuted to a final determination does not of itself constitute an abandonment of such real property as a part of the assets of the insolvent estate to be subjected to the extinguishment of the liabilities of the insolvent.

[10] ID.—ABANDONMENT—QUESTION OF FACT—INTENTION—BURDEN OF PROOF.—In such a case, the question of abandonment is one of fact to be determined by the jury or the court, if the issues of fact are tried by the court, and the burden is upon the person relying upon an abandonment of the property to show that there was an intention in the assignee to abandon the property.

[11] ID.—ACTION BY INTERVENER TO QUIET TITLE—STATUTE OF LIMI-TATIONS.—In an action to quiet title by the grantee of an insolvent debtor, a complaint in intervention by the assignee of the estate of such insolvent debtor to quiet title to the property in question as against the parties to the original complaint and in favor of the intervener, in effect, is for the recovery of real property, and the time within which such complaint in intervention should be commenced is governed by section 318 of the Code of Civil Procedure.

[12] ID.—APPOINTMENT OF ASSIGNEE TO RECONVEY TO INSOLVENT—VOID ORDER.—An order, made after the death of the original assignee, appointing an assignee for the limited purpose of making a conveyance to the insolvent of the property conveyed to the original assignee is unauthorized by the Insolvency Act of 1880, and, therefore, void. (Opinion of supreme court on denial of hearing.)

APPEAL from a judgment of the Superior Court of Los 'Angeles County.   John W. Shenk, Judge.   Affirmed.

The facts are stated in the opinion of the court.

A. J. Mitchell and Chas. H. Brock for Appellant.

J. H. Creighton for Respondent.

HART, J.—Plaintiff brought the action to quiet his title to certain lots in the town site of Howard, in the county of Los Angeles. Judgment was in favor of plaintiff for a portion of said lots and in favor of the intervener as to the balance thereof. Plaintiff prosecutes this appeal from that portion of the judgment which was in favor of the intervener, no question arising herein as to the other lots.

The complaint was filed on September 23, 1915, and was in the usual form, alleging that defendant, Hunt, claimed some interest in the real property adverse to plaintiff. On February 16, 1916, H. W. Reynolds, as assignee in the matter of Jeremiah W. German, an insolvent debtor, filed a complaint in intervention.

The findings of the court present fully certain facts of the case. They are as follows: (2) That, on the thirty first day of July, 1888, Jeremiah W. German was the owner in fee and was in possession of the lots in controversy; (3) that on said day said German filed his petition in voluntary insolvency in the superior court of the county of Los Angeles and that he was duly adjudged an insolvent; (4) that at a meeting of the creditors of said insolvent, Jacob Baruch was chosen assignee in said insolvency matter and duly qualified as such assignee; (5) That in the schedule attached to the petition of said insolvent was the real property involved herein; (6) that verified claims were filed against said insolvent estate to the amount of $4,907.09, which were duly allowed by the court and are now unpaid, except that there was paid thereon the sum of 7.1046 cents on each dollar thereof, received from the sale of the personal property belonging to the insolvent; (7) that, on the 8th of September, 1888, the county clerk deeded said real property to the assignee, Jacob Baruch, and to his successor or successors in office; (8) that said assignee, Jacob Baruch, died about January 1, 1909; (9) that, about the 28th of February, 1912, the court, "without any notice to creditors or to anyone else interested in said insolvency proceedings, made the following order in said proceedings, to wit: 'This cause coming on to be heard upon the application of Jere-

miah W. German, the insolvent debtor, . . . for an order dismissing this action for want of prosecution, and it appearing . . . that no proceedings have been had therein for a period of more than twenty years, . . . It is ordered that the said action be, and the same is hereby dismissed for want of prosecution'."; (10) that on or about the seventh day of June, 1912, the court, "without any notice to creditors, or to anyone else interested in said insolvency proceedings, made the following order: 'It appearing to the court' that said order dismissing the action 'was inadvertently made in this, that said order does not provide for the disposition of the undisposed property heretofore conveyed to the assignee' of the estate of said insolvent, 'It is therefore ordered that the said order of dismissal be and the same is hereby canceled and set aside and the court hereby assumes jurisdiction of said cause for the purpose only of taking such further action therein as may be necessary and proper in the furtherance of justice; and it further appearing to the court that there is certain real esate heretofore conveyed to Jacob Baruch as assignee in this cause . . . and that no disposition has been made of said real estate by the said assignee; . . . that by reason of the death of the said Jacob Baruch . . . a vacancy exists and that there is no person qualified to act herein; . . . that no successor to said Jacob Baruch as assignee has been appointed and that by reason of the want of prosecution of said action the said assignor . . . is entitled to a dismissal thereof and to a reconveyance of any undisposed of property herein; that said German has conveyed to one A. O. Daman, by deed dated March 5, 1912, . . . an interest in and to the said undisposed of real estate; it is therefore ordered that James H. Blanchard be and he is hereby appointed as assignee in this cause, without bond, for the purpose only, and he is hereby directed to convey to A. O. Daman, as grantee of Jeremiah W. German, the undisposed of real estate heretofore conveyed to Jacob Baruch,' " etc.; (11) that on or about the 28th of February, 1917, said court vacated the portion of the last-above quoted order which appointed said Blanchard special assignee, and appointed H. W. Reynolds as assignee with bond of one thousand dollars; (12) that the said German gave a quitclaim deed, dated March 5, 1912, to A. O. Daman, to the property in question; (13) that on or about the

seventh day of June, 1912, the said Blanchard, acting as special assignee, gave a deed to said property to said Daman, purporting to convey the title from the estate of said insolvent, "but the said James H. Blanchard had not qualified as said assignee . . . and never did qualify as such assignee, and no order had been obtained for the making of said transfer, save and except the order" set out in finding 10, "and no notice of sale had been given" or obtained, "and no sale had been made of said property, and no consideration for said deed passed to the said assignee, . . . and the estate of said insolvent and the creditors therein did not . . . at any time receive any consideration for the said transfer of said property," and no notice to creditors was ever given of the intention to make said transfer; (14) that the creditors first obtained knowledge of the making of the orders set out in findings 9 and 10 about the first day of November, 1915; (15) that, about the tenth day of June, 1912, A. O. Daman gave to Frank P. Stedman a grant deed to said property, the consideration recited in said deed being one thousand dollars; (16) that, about the seventh day of September, 1915, Stedman gave to Daman a grant deed to said property, the consideration recited in said deed being ten dollars; (17) that in the account of the assignee, Jacob Baruch, filed July 9, 1889, said Baruch reported to the court that the real estate in question was undisposed of, for the reason "that the said assignee was unable to find purchasers therefor, and that upon the twenty-second day of July, 1889, this court audited and settled the account of said assignee."

The points made by the appellant for a reversal are thus specifically stated in the brief of the respondent:

"1. That the demurrer to respondent's amended complaint should have been sustained; 2. That there is no evidence to show that Jacob Baruch was ever appointed assignee or ever qualified as such in the insolvency proceedings of Jeremiah W. German, or that the property here involved was ever assigned to him, or that respondent was ever appointed assignee in such insolvency matter or ever qualified as such, or that the property in question was ever assigned to him; 3. That the findings of fact and conclusions of law do not support the judgment; 4. That the intervener could not make a collateral attack on the orders

made in the insolvency proceedings for the reason that the
superior court when sitting as an insolvency court is a court
of general jurisdiction; 5. That the order of dismissal made
in the insolvency proceedings was a valid order and dis-
posed of all of the interest which the assignee or creditors
might or could have had in the property here involved and
put the property back in Jeremiah German just the same
as if no insolvency proceedings had been had; 6. That the
order setting aside and vacating the order of dismissal did
not set aside and vacate it, and if any of the order setting
aside and vacating the order of dismissal is void, it is void
*in toto;* 7. That the property here involved was abandoned
by the assignee in the insolvency proceedings; 8. That the
intervener is barred from bringing this action by the stat-
ute of limitation; 9. That by reason of the great lapse of
time since the insolvency proceedings were instituted, all
the claims, debts, liabilities, or demands against Jeremiah
German on July 31, 1888, being the time when said insol-
vency proceedings were commenced, must be deemed to have
been discharged; 10. That appellant was an innocent pur-
chaser of said property; 11. That James H. Blanchard was
the legally appointed and qualified assignee in the insol-
vency matter.''

It is deemed proper first to examine and present herein
such of the provisions of the Insolvency Act of 1880 (Stats.
1880, p. 82), under which the insolvency proceedings in-
volved herein were instituted, as have direct pertinency to
the inquiry submitted by this appeal.

The first, second, third, and fourth sections of said act
pointed out the manner in which an insolvent debtor might as
a voluntary insolvent, petition the superior court to be dis-
charged from his debts and liabilities, and provided that
annexed to his petition there should be a schedule of his
debts and liabilities, which should contain a full and true
statement thereof, and an inventory containing a descrip-
tion of all his estate, both real and personal. The fifteenth
section provided for the election by the creditors of an as-
signee to take charge of and administer the insolvent's estate.
Said section also provided that the assignee so elected should,
within five days after his election, file with the clerk of the
court a bond, in an amount fixed by the court, with two
or more sufficient sureties, approved by the court, and con-

ditioned for the faithful performance of the duties devolving upon him. The court could, however, upon a proper showing, extend the time for filing such bond beyond the five days' limit specified in said section for said purpose.

Section 25 of the act provided as follows: "The assignee shall, as speedily as possible, convert the estate, real and personal, into money. He shall keep a regular account of all moneys received by him as assignee, to which every creditor or other person interested therein may, at all reasonable times, have access. No private sale of any property of the estate of an insolvent debtor shall be valid, unless made under the order of the court upon a petition in writing, which shall set forth the facts showing the sale to be necessary. Upon filing the petition, notice of at least ten days shall be given by publication and mailing, in the same manner as is provided in section seven of this act. If it appears that a private sale is for the best interests of the estate, the court shall order it to be made." (See, also, subd. 4, sec. 21, of said act.)

Section 58 of the act provided: "Pending proceedings by or against any person, copartnership, or corporation, no statute of limitation of this state shall run against a claim, which in its nature is provable against the estate of the debtor."

Section 66 of said act provided: "The court may, upon the application of the debtor, if it be a voluntary petition, or of the petitioning creditors, if a creditor's petition, dismiss the petition and discontinue the proceedings at any time before the appointment of assignee. After the appointment of the assignee, no dismissal shall be made without the consent of all parties interested in or affected thereby."

[1] It is settled that the superior court, in proceedings in insolvency, exercises a special or limited jurisdiction. It follows, therefore, that everything required by the insolvency statute to give said court the jurisdiction to hear and determine the same or to act in the proceedings must be made affirmatively to appear in the record. If any jurisdictional fact appears, upon the face of the record, to be wanting, then the court was wholly without jurisdiction to act or to make any valid order or adjudication in the proceeding.

In the case of *McDonald* v. *Katz,* 31 Cal. 167, the court said, referring to insolvency proceedings: ''The proceedings are special, and no intendments can be made in favor of the jurisdiction. Everything bearing upon that question must appear affirmatively,'' citing *McAllister* v. *Strode,* 7 Cal. 430; *Judson* v. *Atwill,* 9 Cal. 478; *Meyer* v. *Kohlman,* 8 Cal. 47; *Swain* v. *Chase,* 12 Cal. 283. (See, also, *Keystone Driller Co.* v. *Superior Court, etc.,* 138 Cal. 738, 742, [72 Pac. 398].)

By the rules stated in the foregoing cases the points as to the jurisdiction of the court to make the several orders referred to must be considered and determined.

[2] 1. The demurrer to the amended complaint in intervention was general and was properly overruled. That pleading states the facts as they are substantially hereinabove reproduced. It is not necessary to examine in detail herein the averments of said complaint and we shall not attempt to do so, since the facts as they are above stated show that, as embraced in the complaint, a cause of action is stated.

[3] 2. As to the point that there was no evidence showing that Jacob Baruch was duly appointed and the qualified assignee in the insolvency proceedings, a ready and conclusive reply is found in the fact that the appellant failed to deny the allegation in the complaint of Baruch's appointment, etc., and so in legal effect admitted that fact. The complaint in intervention alleges the appointment and qualification of Baruch as assignee, and also that the clerk of the superior court, on the eighth day of September, 1888, deeded and assigned to said Baruch, as assignee, etc., and *to his successor and successors in office* all of the property, real and personal, belonging to the insolvent, Jeremiah W. German, except such property as was by law exempt, said deed and assignment having been duly recorded. There was no denial of these averments, and, as above stated, the facts so averred, therefore, stand as having been admitted. Nor was there any denial in the answer of the averments of the complaint in intervention that the court set aside and vacated the order appointing James H. Blanchard as assignee and declared the office of assignee vacant, and thereupon appointed H. W. Reynolds (intervener and respondent) as such assignee and that said Reynolds ''ever since has been,

and now is, the duly appointed, qualified and acting assignee in the said insolvency matter," etc.

It requires the citation of no authorities to confirm the obvious proposition that where certain vital ultimate facts alleged in a complaint are not denied by the adversary party in his pleading such facts are to be deemed admitted, and that in such case it is not necessary to introduce evidence extrinsic to the pleadings themselves to support such facts. [4] But, in this connection, it may be noted that counsel for appellant contend that there is neither allegation nor proof that the property was *assigned* to the intervener. This contention cannot be maintained. The undenied allegation of the complaint in intervention is, as we have seen, that the clerk of the court, upon the filing of the petition in insolvency and the adjudication following therefrom that German was an insolvent debtor, deeded and assigned to said Baruch, the original assignee, "and *to his successor and successors in office,* all of the property, real and personal, then belonging to the said Jeremiah W. German," etc. It follows, of course, that the office of assignee having become vacant and a successor to Baruch having been regularly appointed and qualified, such successor thereupon immediately became vested with the right to the possession of all the property belonging to the insolvent estate by virtue of the assignment and conveyance to Baruch. We have found no provision in the insolvency law to the effect that, where the office of assignee has become vacant and the vacancy has been regularly supplied by the appointment of another to discharge the duties of the office, and where the property of the insolvent estate had already been assigned and conveyed to the original assignee and his "successor and successors in office," it is necessary or requisite that there should be a specific assignment and conveyance of the property belonging to the insolvent's estate to such successor or successors. We, therefore, conclude that it was not necessary to plead and prove that the clerk directly assigned and conveyed the property to Reynolds, Baruch's successor.

[5] 3. The order dismissing the insolvency proceedings showed upon its face that the court was without jurisdiction to make said order, and that the same was absolutely void. The petition for the order of dismissal and the order constitute the entire record of the proceeding wherein the

order dismissing the proceedings was made, and it appears therefrom that the petition was filed on the twenty-eighth day of February, 1912, and that the order of dismissal was made on the same day. As will be observed, section 66 of the Insolvency Act, above quoted herein, provided that after the appointment of an assignee in insolvency, no dismissal of the petition in insolvency and discontinuance of the insolvency proceedings should be made and ordered without the consent of all parties interested in or affected thereby. It was not made to appear upon the face of the petition to dismiss or in the order of dismissal or otherwise that the consent of the parties interested in or affected by the insolvency proceedings had been obtained for a dismissal and discontinuance of the proceedings in insolvency. The consent of the parties interested in the proceedings involved a jurisdictional fact. The court was absolutely powerless to make an order of dismissal and discontinuance of the proceedings in the absence of a showing of that fact, and its act in making the order under such circumstances was *coram non judice*. Moreover, since the superior court was in insolvency proceedings vested only with a special or limited jurisdiction, no presumptions or intendments can be indulged in favor of the validity of the order. It was necessary that the consent of all interested parties should be made to appear upon the face of the proceeding to dismiss to render the order immune from collateral attack. As above intimated, there was no showing nor any attempt to show by evidence *dehors* the record of the proceeding to dismiss that the consent of the interested parties to a dismissal and a discontinuance of the insolvency proceedings actually was had, assuming that it would have been proper thus to have made such a showing.

[6]   4. It was, of course, proper for the court to set aside and nullify its order dismissing the insolvency proceedings. As above shown, the court was wholly without authority or jurisdiction to make the order of dismissal and discontinuance, and there was, therefore, left to it no other alternative but that of vacating said order and thus getting it out of the way and so preventing complications which would necessarily arise in the insolvency proceedings by reason of said order. [7]   The deed of conveyance of the property by German to the appellant was, of course, absolutely void.

It conveyed nothing. The unauthorized dismissal of the insolvency proceedings—unauthorized because the court was without jurisdiction to dismiss the proceedings—did not have the effect of nullifying the proceedings. They still were pending in contemplation of law, and, of course, the insolvent was not legally reinvested with title to the property which had belonged to the estate and which had been conveyed for the purposes of administration of the estate to the assignee and his successor and successors in office. And the fact that appellant, having conveyed the property to one Stedman after German, in the interval between the dismissal and the restoration of the insolvency proceedings, had made a purported conveyance of the property to the appellant, received a conveyance back of the property from said Stedman could not have the effect of vesting any greater title in the appellant than he was able to convey to Stedman. In other words, having obtained no title from German the appellant could convey none to Stedman, and, therefore, the latter had no title he could convey when he made the purported reconveyance to the appellant.

It was also proper for the court, upon vacating the order of dismissal and thus reviving the proceedings, to appoint an assignee to take charge of and administer upon the remaining undisposed of assets of the insolvent's estate, since there was a vacancy in that office by reason of the death of the original assignee. [8] The appointment of James H. Blanchard as assignee to succeed Baruch, assignee, was regular. But Blanchard failed to file a bond as assignee, and he was, therefore, without authority to exercise the duties of his office or to perform a valid act as assignee until he filed such bond. It follows that the conveyance by him of the land in controversy to the appellant involved a void act. It was wholly without legal force or effect. Counsel for the appellant vigorously contend, however, that the mere appointment of Blanchard vested him with all the powers of an assignee or a trustee and that he could act or perform the duties of the office without giving or filing a bond conditioned for the faithful discharge of his duties as such assignee. We are unable to concur in that contention. As above shown, the Insolvency Act (sec. 15) provided that the assignee, within a certain specified time, or within any further time which the court might allow for meeting that re-

quirement, should file a bond conditioned for the faithful performance of the duties devolving upon him. It is true that section 15 of said act does not expressly declare that the filing of the bond should be ·a prerequisite to his right to exercise his authority as assignee, but it certainly meant that such was to be the case. If the assignee could go on and legally administer the insolvent estate without filing the bond required, what could have been the object of the legislature in requiring a bond at all? The assignee derived his title to the insolvent's estate from the assignment, which divested the insolvent of his property and vested it in the assignee from the time of the insolvency. Both the insolvent and the creditors are interested in the estate and are entitled to have its assets administered according to the best interests of all concerned. The insolvent is interested in having his liabilities as far extinguished by the assets of his estate as possible and the creditors are interested in having their claims as nearly satisfied in full as the condition of the estate will permit. Hence, it was a wise provision that one having cast upon him so important a trust should be required to file a sufficient bond conditioned for the faithful performance of the trust, and we entertain no doubt that the requirement that an assignee in insolvency should file a bond for that purpose was intended by the legislature as an essential requisite for his qualification to exercise or perform the duties of that office. At any rate, it has been so held in a number of cases, among which may be mentioned the case of *Winchester* v. *Union Bank of Maryland,* 2 Gill & J. (Md.) 79, [19 Am. Dec. 255]. Furthermore, the order appointing Blanchard limited his authority as assignee to the performance of the act of making a conveyance of the property in dispute to the appellant. That portion of the order was absolutely void, since it does not appear therefrom or from anything in the proceeding culminating in his appointment that a petition was filed praying for the sale or disposal of the property by private sale. Section 25 of the Insolvency Act provided that "no private sale of any property of the estate of an insolvent debtor shall be valid unless made under the order of the court upon a petition in writing, which shall set forth the facts showing· the sale to be necessary." And the same section provided that upon the filing of a petition for such a sale notice of at least ten days

should be given by publication, etc. The order appointing Blanchard as assignee and the order authorizing him to convey the property to the appellant was, as we have seen, practically one order and both were made on the same day. Thus it is manifest that there it not only not any showing that a petition was presented to the court asking for a private sale, but that it was absolutely impossible for any notice whatever, much less the required notice of ten days, to have been given of such sale, assuming, of course, that the conveyance to the appellant involved a sale by the assignee. [9] And this brings us to the question, raised by the appellant, that the right to subject the land in controversy to the payment of the debts of the insolvent was lost by reason of the fact that said land had been abandoned by the assignee. But there is no merit to the point. The complaint of the intervener alleges that said property was taken possession of by the original assignee, Jacob Baruch, the same having been assigned and conveyed to him by the clerk of the superior court. This allegation is not denied by the answer to the complaint in intervention and therefore stands as admitted. The fact that the administration of the estate of the insolvent remained in abeyance or was dormant because the proceedings in insolvency were not promptly prosecuted to a final determination did not constitute an abandonment of the property as part of the assets of the insolvent estate to be subjected to the extinguishment of the liabilities of the insolvent. The rule of law as to abandonment is that there is no presumption of abandonment from mere lapse of time. (*Partridge* v. *McKinney,* 10 Cal. 181. See, also, *Utt* v. *Fry,* 106 Cal. 352, 398, [39 Pac. 807], as to what will and will not constitute the abandonment of property.) In the present case, there could be no abandonment except by the assignee in whom the title to the property for the purposes of the insolvency proceedings had been vested. There is no evidence tending to show that Baruch abandoned or intended to abandon the property, save and except the fact that he failed to sell it during his incumbency as assignee and appropriate the proceeds of the sale to the payment of the debts of the insolvent. This omission may be assumed to have involved a dereliction of official duty on the part of Baruch rather than an abandonment, since it does not appear that the property was not

of sufficient value to have justified the expense of selling it for the benefit of the insolvent's estate.

Appellant cites a number of cases which it is claimed support the view that the property herein involved was abandoned and therefore the right to appropriate it to the payment of the debts of the insolvent lost; but we have examined the cases and do not perceive that they are in point here. The property belonged to the insolvent's estate and it was available for disposition by the assignee in insolvency. No claim was ever made that it was abandoned or that there was an intention to abandon it as a part of the insolvent's estate until the void order was made, at the instigation of the insolvent, dismissing and discontinuing the insolvency proceedings, when the insolvent himself undertook to retake possession of it and convey it to the plaintiff. [10] The question of abandonment is one of fact to be determined by the jury or the court, if the issues of fact are tried by the court, and the burden was upon the plaintiff clearly to show that there was an intention in the assignee to abandon the property. (*Latham* v. *City of Los Angeles,* 87 Cal. 514, 518, [25 Pac. 673].) The finding of the court in this case that there was no abandonment is conclusive upon this court.

[11]   5. The contention that the action, in so far as it is made by the complaint in intervention, is barred by the statute of limitations is without force. The complaint of the intervener is one for the quieting of title to the property in dispute as against the plaintiff and the defendant and in favor of the intervener, or, in effect, is for the recovery of real property, and the claim that the intervener's claim is barred proceeds upon the theory that the action, as to the time within which it should have been commenced, is governed by section 338 of the Code of Civil Procedure. But it is manifest that that section does not apply to the intervener's case, but that section 318 of said code governs as to the time within which such an action may be commenced. Section 338 provides for the commencement of actions where the relief prayed for is based upon the ground of fraud, and that is not the ground of the relief asked for by the intervener. Section 318 provides that an action for the recovery of real property, or for the possession thereof, cannot be maintained "unless it appears that the plaintiff,

his ancestor, predecessor, or grantee, was seised or possessed of the property in question within five years next before the commencement of the action." The supreme court, in construing section 318, in *Murphy* v. *Crowley*, 140 Cal. 141, 146, 147, [73 Pac. 820, 821], says: "It seems to be established, therefore, by these cases that, although the main ground of the action is fraud or mistake, whereby the defendant has obtained the legal title to the land in controversy, and the chief contention between the parties is with respect to the fraud or mistake alleged, yet, if the plaintiff alleges facts which show, as matter of law, that he is entitled to possession of the property, and a part of the relief asked is, that he be let into possession, or that his title to the land be quieted, his action is in reality for the recovery of real property, and is not barred except by the five-year limitation contained in section 318. The same rule has been followed in the states of Iowa, Kansas, Missouri, and Texas. (*Williams* v. *Allison*, 33 Iowa, 278; *Reihl* v. *Likowski*, 33 Kan. 515, [6 Pac. 886]; *Dunn* v. *Miller*, 96 Mo. 338, [9 S. W. 640]; *Shepard* v. *Cummings*, 44 Tex. 502.) There is a case to the contrary in New York. (*Hoyt* v. *Putnam*, 39 Hun, 406.)

"Unless the decisions of this court above cited are to be overruled, it must be conceded that, although the wrong complained of, and undoubtedly the principal contest in the case, arises from the undue influence exerted by the defendant Crowley on her deceased husband in his lifetime, the action in question is nevertheless an action to recover real property and for the possession thereof, and is not barred by the provisions of section 318." (See, also, *Page* v. *Garver*, 146 Cal. 577, [80 Pac. 860].)

In the present case the first act which could start the statute of limitations to running, or could in any way impart to the intervener or the creditors of the estate of which the intervener became the assignee, information that the appellant claimed an interest in the property was the filing for record of the deed from German to the appellant, which act of recordation occurred on the eleventh day of March, 1912, or, as counsel for the respondent suggest, perhaps the act of the filing of the petition for a dismissal of the proceedings in insolvency and the making of the order of dismissal might have been the first acts indicating a claim of

interest in the property by parties other than the assignee, and the order of dismissal was made on the twenty-eighth day of February, 1912. The intervener's amended complaint, upon which the action was tried, was filed on the eleventh day of March, 1916, within the five years' limitation prescribed by section 318 of the Code of Civil Procedure. It is, therefore, manifest, as stated, that the intervener's action is not barred.

6. The point that "because of the lapse of time since the filing of the petition by the said Jeremiah W. German to be adjudged an insolvent debtor, the presumption exists that all claims, debts, liabilities, and demands that were valid claims against said petitioner on July 31, 1888, have been paid and discharged," is conclusively answered by section 58 of the Insolvency Act, above quoted herein, that no statute of limitation of this state shall run against a claim which, in its nature, is provable against the estate of the debtor.

7. It is claimed that the findings of fact and conclusions of law do not support the judgment. It is not necessary to reproduce herein the findings of fact and the conclusions of law to show that this contention has no foundation. It is sufficient to say that we have carefully examined the findings and the conclusions of law and that we have concluded from said examination that the judgment derives ample support from them.

There are numerous other points made by the appellant in impeachment of the judgment, but we have discovered no merit in them. We are satisfied that the judgment is legally impregnable and it is, accordingly, affirmed.

Ellison, P. J., *pro tem.*, and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 28, 1920, and the following opinion then rendered thereon:

THE COURT.—In denying the petition for a hearing in this court after decision by the district court of appeal of the third appellate district we are not to be understood as approving that portion of the opinion substantially holding

that the ordinary presumptions and intendments applicable to judgments of courts of record are not applicable to judgments and orders of the superior court in insolvency proceedings. We think that here the order of the superior court dismissing the insolvency proceeding, and the subsequent order appointing Blanchard as assignee for the limited purpose of making a conveyance of the property to the insolvent, were manifestly void upon their face—the order of dismissal because it sufficiently appears on the face of the record that it was made without the consent of the creditors, [12] and the other order because no such appointment of an assignee is authorized by law. In view of this conclusion, we intimate no opinion upon the question of the effect of the failure of Blanchard to give a bond. In all other respects we are satisfied with the opinion of the district court of appeal.

The application for a hearing in this court is denied.

All the Justices concurred.