[Civ. No. 11113. First Appellate District, Division One.—June 19, 1940.]

GERTRUDE SLATER, Appellant, v. SHELL OIL COMPANY (a Corporation), Defendant.

Norman H. Elkington and Joseph E. Smith for Appellant.

McCutchen, Olney, Mannon & Greene, J. M. Mannon, Jr., F. F. Thomas, Jr., Wm. E. Wright and J. W. Thomas for Respondent.

PETERS, P. J.—Plaintiff appeals from a judgment of nonsuit.

In 1915 plaintiff and her husband granted to a corporation, the Valley Pipe Line Company, an easement in the nature of a right of way, under the terms of which the corporation was

permitted to install and maintain a pipe line across the ranch of the grantors in Contra Costa County. Mr. Slater has since died, the plaintiff now being the sole owner of the property. In the instrument granting the easement the grantee and its successors and assigns were given the right to install an additional line or lines across the ranch upon payment for each such line a sum equal to the amount paid the grantors when the easement was first granted, that is $86. The defendant, the Shell Oil Company, claiming to have succeeded to the rights of the Valley Pipe Line Company, constructed a second pipe line across the ranch of plaintiff in 1936. It is the construction and maintenance of this second pipe line that has given rise to the present action. Plaintiff contends that the defendant has not succeeded to the rights of the Valley Pipe Line Company because, it is claimed, that company was operating as a public utility, and authorization of the Railroad Commission was not secured for the transfer of the assets of that company to the Shell Oil Company. For that reason plaintiff claims that defendant, in constructing the second pipe line, was and is a trespasser. The right of the Shell Oil Company to operate the first pipe line is not questioned in this action, the plaintiff conceding that Shell Oil Company has gained the right to maintain the first pipe line by adverse possession.

The complaint alleges that plaintiff is the owner of the property in question, and that defendant, in September, 1936, without right or consent of plaintiff, entered upon the property in question, and installed the pipe line; that in installing the pipe line the defendant appropriated a strip of land two feet in width and about two thousand eight hundred feet long, extending from the surface of the ground to a depth of about six feet. It is further alleged that in constructing the pipe line the defendant knocked down and destroyed certain trees growing upon the land, and broke and destroyed the bank of a creek running through the land; that the pipe line has leaked causing oil to saturate the soil rendering the land unfit for agriculture. Plaintiff prays for damages totaling $60,000.

In its answer the defendant admitted the entry and construction of the pipe line in September, 1936, but denies that such entry and construction was without right. As affirmative defenses it is pleaded that defendant owns a right of way

across the ranch for the construction of the pipe line; that under the terms of the agreement granting the right of way it is provided that any damages caused by the construction or maintenance of the right of way shall be settled by arbitration; that plaintiff has not complied with the arbitration provisions. As a separate defense it is alleged that when the pipe line was constructed in 1936 plaintiff at first objected but subsequently withdrew her objections and consented thereto, and that defendant completed the construction in reliance upon plaintiff's consent and acquiescence.

■ Before discussing the evidence introduced by plaintiff, some brief mention should be made of the legal rules governing the trial court in passing on a motion for nonsuit, and the rules controlling the appellate courts in passing on an appeal from a judgment of nonsuit. When such motion is made, as here, at the close of plaintiff's case, all the evidence must be construed most strongly against the defendant. The trial and appellate courts must indulge in every inference or presumption fairly arising from the evidence in favor of plaintiff. If the evidence is fairly susceptible of two constructions, or if either of several inferences may reasonably be made, the trial and appellate courts must take the view most favorable to plaintiff. ■ All the evidence in favor of plaintiff must be taken as true, and, if contradictory evidence has been introduced, it must be disregarded. Neither the trial court nor the appellate court is permitted to consider testimony tending to create a conflict. (See cases collected, 9 Cal. Jur., p. 551, sec. 35 et seq.) These principles must be kept in mind in considering the evidence to which reference will now be made.

In 1914 a British corporation, the Anglo Saxon Petroleum Company, Ltd., desired to engage in the business of producing, refining and marketing petroleum oil and its products in California. Part of its plan embraced the construction of an oil pipe line from certain oil lands near Coalinga, Fresno County, to Martinez, Contra Costa County, where it contemplated constructing an oil refinery. To accomplish this purpose it was necessary to secure rights of way from various land owners for a distance of over one hundred seventy miles. On April 17, 1914, it caused to be incorporated a California corporation known as the Valley Pipe Line Company. All of the stock, except five qualifying shares, was held by the Anglo

Saxon Petroleum Company, Ltd. The Valley Pipe Line Company petitioned the Railroad Commission for permission to issue its stock, and from 1914 to 1919 it filed seven supplemental petitions with that commission in connection with the issuance of its securities. These were all filed under protest, the corporation contending it was not a public utility. In 1918, pursuant to the direction of the Railroad Commission, the corporation, under protest, filed with the commission a schedule of rates and regulations applicable to the transportation of petroleum through the pipe line. By that schedule the Valley Pipe Line Company offered to carry oil for the public on certain terms and conditions.

After its incorporation, the Valley Pipe Line Company proceeded to secure rights of way and to construct its pipe line. It was stipulated on the present trial that if recalled to the witness stand Mrs. Slater would testify that, in securing the Slater right of way, the right of way representative of the Valley Pipe Line Company told the Slaters that if necessary that company "would condemn the property, which would mean additional costs to the Slaters".

About a year after the incorporation of the Valley Pipe Line Company, the Shell Company of California was incorporated by the Anglo Saxon Petroleum Company, Ltd. After the incorporation of this company (its officers being the same as those of the Valley Pipe Line Company), the capital stock of the Valley Pipe Line Company was transferred to the Shell Company of California. Later the Shell Company of California, by appropriate proceedings, changed its name to the Shell Oil Company, which is its present name, and the name under which it is here sued.

The pipe line constructed and operated by the Valley Pipe Line Company constituted the only source of supply of the Shell Oil Company. Although it had filed a schedule of rates with the Railroad Commission under which it offered, under protest, to carry oil for the public, it in fact only carried oil for the Shell Oil Company. The two corporations (until 1919) were operated as separate entities, the Shell Oil Company paying the Valley Pipe Line Company for transportation of the oil, and the latter company paying dividends to its sole stockholder, the Shell Oil Company.

By an agreement dated December 31, 1918, the Valley Pipe Line Company purported to transfer all of its properties,

including the Slater right of way, to the Shell Company of California. This purported transfer was approved by the board of directors of the Valley Pipe Line Company January 23, 1919. Admittedly the consent of the Railroad Commission was not secured to this transfer. This transaction was admittedly conceived and carried out for the purpose of avoiding, if possible, the imposition of a federal tax imposed on pipe line companies. The Valley Pipe Line Company had paid this tax under protest, its contentions being (1) that in fact the Valley Pipe Line Company was the Shell Oil Company, and that company was simply transporting its own oil; and (2) that the tax was imposed only on public utility pipe line companies, and that Valley Pipe Line Company was not a public utility. The Valley Pipe Line Company sought to recover the tax paid. In *Meischke-Smith* v. *Wardell*, 286 Fed. 785, the Circuit Court of Appeals for the Ninth Circuit decided adversely to the plaintiff. It held that the two corporations were separate entities. After analyzing the various statutory provisions in California, and the activities of Valley Pipe Line Company as already set forth in this opinion, it also held that Valley Pipe Line Company was a public utility, and that even if it were not it was subject to the tax.

After attempting to transfer all of its assets to the Shell Company of California, the Valley Pipe Line Company filed in the Superior Court in San Francisco, under then existing statutory provisions, an application for dissolution. This application merely recites, so far as pertinent here, that the applicant is a California corporation. It does not state that it is a public utility, nor does it allege consent of the Railroad Commission. It alleges that the stockholders have authorized the dissolution, and that all claims and demands against the corporation, and all taxes due from it, have been paid. In due course, in April of 1919, the Superior Court entered its "Decree Dissolving Corporation". This decree, in addition to dissolving the corporation, appointed W. Meischke-Smith, J. C. Van Eck, John Lawson, B. D. Adamson and H. R. Gallagher trustees for the stockholders with power to settle all the affairs of the company and "to distribute and convey all the property of the said corporation to its stockholders".

After the transfer of the assets of the Valley Pipe Line Company and the dissolution of that company, the Shell Oil Company operated the pipe line, and is still operating the

pipe line, carrying oil only for itself. In 1936 the Shell Oil Company determined to construct a new pipe line from Bakersfield to its refinery at Martinez. It desired to avail itself of its claimed right under the original grant to construct a second pipe line across the plaintiff's property. On September 5, 1936, a representative of the defendant visited the plaintiff's ranch, and delivered a check and a letter to one of the sons of the plaintiff. The check was in the sum of $86. The letter stated that the Shell Oil Company proposed to construct the second pipe line across the ranch under the grant originally given to Valley Pipe Line Company. The letter stated, among other things: "We are the owner and holder (by assignment from Valley Pipe Line Company) of a Right of Way Grant" originally given to Valley Pipe Line Company.

The work of constructing the second pipe line was commenced within an hour or two of the time of the delivery of the letter. The Slaters consulted their then attorney. He investigated the problem, consulted with Shell Oil Company officials, and, upon ascertaining from a title company that Shell had "succeeded to all Rights of Way of the Valley Pipe Line Company" by deed, and, having been informed of the assignment and transfer of 1918 by officials of the Shell Oil Company, but at no time having been told that Valley Pipe Line Company was a public utility, he advised the plaintiff that the Shell Oil Company had the legal right to proceed. In November, 1936, the plaintiff cashed the $86 check. Later, in August of 1937, the plaintiff's then attorney discovered the true facts, and on the ground the Shell Oil Company "did not acquire any title to this right of way" and for that reason "it now appears that you have no right at all upon this property", tendered to the defendant a cashier's check for $86, which has never been cashed. This action was thereupon instituted.

In constructing the second pipe line the Shell Oil Company, according to the evidence introduced by plaintiff, damaged the real property to a material extent.

At the conclusion of plaintiff's case the defendant moved for a nonsuit on the following grounds: (1) That the evidence is insufficient to show that Valley Pipe Line Company was a public utility; (2) that if the evidence is sufficient to show that fact, plaintiff has no standing to raise the question;

(3) that upon the dissolution of Valley Pipe Line Company the Shell Oil Company succeeded to the rights and properties of the Valley Pipe Line Company by operation of law; (4) that regardless of the question as to whether Shell Oil Company possesses, by assignment or operation of law, the original easement granted to Valley Pipe Line Company, the plaintiff by her conduct, granted an implied parol license or easement by implication to Shell Oil Company to maintain the pipe line in question. In ruling on the motion, the trial court stated that, in its opinion, the Valley Pipe Line Company was a public utility and that the attempt to deed the properties to Shell Company of California was ineffectual in the absence of consent by the Railroad Commission. The motion was granted, however, on the third ground urged by defendant, namely, that upon dissolution of the Valley Pipe Line Company title to its property, including the right of way and the right to build a second pipe line, vested in the single stockholder, the Shell Oil Company.

█ Little consideration need be given to the fourth ground urged in support of the motion for nonsuit—namely, that Mrs. Slater by her conduct conferred an implied easement on the Shell Oil Company. This is so for two reasons. In the first place, that is a question of fact which must be left to the jury. From the evidence, to say the least, conflicting inferences might arise, one favorable to the plaintiff. In the second place, even if such parol or implied license had been conferred, the cause should have gone to the jury on the issue of damages caused by the construction and maintenance of the pipe line, the arbitration provisions of the Slater agreement not being applicable to such parol license.

█ We are also of the opinion that the trial court correctly refused to grant the nonsuit on the first and second grounds urged. There can be no reasonable doubt but that under the facts and the law, it was at least a question of fact as to whether Valley Pipe Line Company was a public utility. Article XII, section 23, of the Constitution, as it read at the time of the incorporation of the Valley Pipe Line Company, provided (Amendment of 1911) : "Every private corporation . . . owning, operating, managing or controlling any commercial . . . pipe line . . . , for the transportation or conveyance of . . . crude oil . . . , either directly or indirectly, to or for the public . . . , is hereby declared to be

a public utility subject to such control and regulation by the railroad commission as may be provided by the legislature . . ."

Section 2 of the Public Utilities Act as amended in 1913 provided: "The term 'public utility', when used in this act, includes every common carrier, pipe line corporation, . . . , where the service is performed for or the commodity delivered to the public or any portion thereof. The term 'public or any portion thereof' as herein used means the public generally, or any limited portion of the public including a person, private corporation, municipality or other political subdivision of the state, for which the service is performed or to which the commodity is delivered, and whenever any common carrier, pipe line corporation, . . . performs a service or delivers a commodity to the public or any portion thereof for which any compensation or payment whatsoever is received, such common carrier, pipe line corporation, . . . is hereby declared to be a public utility subject to the jurisdiction, control and regulation of the commission and the provisions of this act." (Stats. 1913, chap. 553, p. 938.) In addition, a special statute applicable to pipe line companies was passed in 1913. (Stats. 1913, chap. 327, p. 657.) By section 1 of that act every private corporation owning, operating, managing or controlling any pipe line within California for the transportation of crude oil or petroleum to or for the public for compensation of any kind is declared to be a common carrier.

Another statute, also passed in 1913, provides in section 3 thereof that: "The construction hereafter of any pipe line or pipe lines intended for the transportation of crude oil, petroleum or any of its products, otherwise than as a common carrier for an aggregate distance of thirty-five or more miles within this state, continuously or otherwise, by means of such pipe line or pipe lines, in whole or in part, for any distance whatsoever, across, along, over or under any public highway or public road within this state is declared to be contrary to public policy and is hereby expressly prohibited." (Stats. 1913, chap. 286, p. 533.)

It is a conceded fact that the pipe line constructed by the Valley Pipe Line Company was about one hundred seventy miles in length, and it is also conceded that it crosses public highways and railroads within the state. Respondent at the

present time makes no attack on the constitutionality of these statutes. Under such circumstances it is obvious that when Valley Pipe Line Company was organized in 1914, it could not lawfully organize as a private corporation, but could only organize as a public utility corporation. It was on this very ground, among others, that the Federal Circuit Court in *Meischke-Smith* v. *Wardell*, 286 Fed. 785, held as one of the main grounds of its opinion that the Valley Pipe Line Company was a public utility. After analyzing the California statutes above set forth, the federal court, at page 793, stated: "We must presume, therefore, that the Valley Pipe Line Company constructed its pipe line from the oil fields of Coalinga to the refinery at Martinez, a distance of 170 miles, for the purpose of transporting oil as a common carrier under the provisions of the Public Utilities Act, and that the transportation here in question was so carried on, and this presumption is not overcome by the claim that the pipe line was engaged only in transporting oil for the Shell Company (owning all the stock of the Valley Pipe Line Company), and not for the public."

In addition to these statutes, and, in our opinion, of more importance, the evidence shows that the Valley Pipe Line Company applied to the Railroad Commission for permission to issue its stock. Such permission and consent was granted on eight occasions. The company also filed with the commission its rates and regulations for the transportation of crude petroleum as a common carrier. While it is true that these acts were all done under protest, nevertheless the company did not see fit to litigate the question, and, in fact, submitted to the jurisdiction of the Commission and held itself out to the public as a common carrier of oil. Moreover, it was stipulated that, had Mrs. Slater been recalled as a witness, she would have testified that the representative of the Valley Pipe Line Company in securing the original right of way agreement represented that the company could resort to eminent domain proceedings if the right of way was not granted. In other words, in order to secure the right of way, the Valley Pipe Line Company represented to the Slaters that it was a public utility, and that it possessed the power of condemnation.

Whether property has been dedicated to a public use is, of course, a question of fact. (22 Cal. Jur., p. 14, sec. 11.)

It is quite apparent that, under these circumstances, plaintiff introduced sufficient evidence from which the jury could have found that, in fact, the Valley Pipe Line Company had dedicated its properties to a public use and was therefore a public utility. Of course, the respondent, when this cause is retried, may present evidence to rebut the testimony referred to above, but on this present appeal all facts in favor of plaintiff must be accepted as true.

From the foregoing it must be taken as established on this appeal that the Valley Pipe Line Company was a public utility. From this basic premise it follows that, as held by the trial court, the attempt made by that company on December 31, 1918, to transfer its properties, including the right of way and agreement in question, was totally ineffectual. Section 51a of the Public Utilities Act as it read all during the existence of the Valley Pipe Line Company provided: "No railroad corporation, street railroad corporation, pipe-line corporation, gas corporation, electrical corporation, telephone corporation, telegraph corporation or water corporation shall henceforth sell, lease, assign, mortgage or otherwise dispose of or encumber the whole or any part of its railroad, street railroad, line, plant or system, necessary or useful in the performance of its duties to the public, or any franchise or permit or any right thereunder, nor by any means whatsoever, direct or indirect, merge or consolidate its railroad, street railroad, line, plant or system, or franchises or permits or any part thereof, with any other public utility, without having first secured from the commission an order authorizing it so to do. Every such sale, lease, assignment, mortgage, disposition, encumbrance, merger or consolidation made other than in accordance with the order of the commission authorizing the same shall be void. . . . Nothing in this subsection contained shall be construed to prevent the sale, lease or other disposition by any public utility of a class designated in this subsection of property which is not necessary or useful in the performance of its duties to the public, and any sale of its property by such public utility shall be conclusively presumed to have been of property which is not useful or necessary in the performance of its duties to the public, as to any purchaser of such property in good faith for value." (Deering's General Laws, 1923, Act 6386, p. 2723.)

It is to be noted that this provision declares every transfer without consent of the Railroad Commission is void. That the section means what it plainly states, that a purported transfer in violation of the statute confers no rights on the transferee, and that third persons may raise this defense, is clearly established by the following cases: *Webster Mfg. Co.* v. *Byrnes,* 207 Cal. 630 [280 Pac. 101]; *Crum* v. *Mt. Shasta Power Corp.,* 220 Cal. 295 [30 Pac. (2d) 30]; *Napa Valley E. Co.* v. *Calistoga E. Co.,* 38 Cal. App. 477 [176 Pac. 699].

▮ The respondent does not argue at length on any of the above propositions. It places its main reliance for an affirmance upon the contention that it succeeded to all rights of the Valley Pipe Line Company, including the Slater right of way and agreement, by operation of law. Respondent's argument successfully urged in the trial court and now urged here, is substantially as follows: A public utility may be dissolved without the consent of the Railroad Commission; upon dissolution the property of the corporation becomes the property of the stockholders; section 51a of the Public Utilities Act, *supra,* has no application to the dissolution of public utilities; that even if such consent is required, the lack of such consent to the dissolution does not affect the jurisdiction of the court to entertain the petition for dissolution; that appellant's attack is collateral; the decree of dissolution is entitled to every presumption necessary to sustain it, including the presumption, if necessary, that Railroad Commission consent was secured. Based on these various premises, it is urged that the dissolution was lawful, and that upon such dissolution the respondent, as sole stockholder, succeeded to the Slater right of way.

There appears to be no decision of the appellate courts of this state as to whether consent of the Railroad Commission is a condition precedent to the maintenance of an action for dissolution of a public utility. The respondent cites two cases—*Jeffries* v. *Commonwealth,* 121 Va. 425 [93 S. E. 701], and *N. Y. and Pa. Ry. Co.* v. *Public Ser. Com.,* 72 Pa. Sup. Ct. Rep. 523—both holding that under statutory provisions there existing public utility corporations may dissolve without consent of the Commission. Respondent also refers to *Matter of Application of Placentia Domestic Water Co.,* 30 Opinions and Orders of the Railroad Commission, p. 430, where the Commission, at page 431, stated: "It is not neces-

sary for corporations to obtain permission from this Commission to dissolve.'' In that case, however, the corporation had first obtained consent of the Commission to a transfer of its property.

For the purposes of this appeal we may accept the conclusion that in a proper case the courts possess the power to dissolve public utility corporations without the consent of the Commission. We do not think, however, that on such dissolution the courts possess the power to transfer, either directly or by operation of law, property of such corporation devoted to a public use to a private corporation where the property will be devoted to a private use. Section 51a of the Public Utilities Act, *supra*, declares void any attempt by a public utility to ''sell, lease, assign, mortgage or *otherwise dispose of*'' its property devoted to a public use, without the consent of the Commission. (Italics ours.) It would be a strange doctrine indeed to permit a public utility to gain rights of way and other property by threat or actual use of eminent domain proceedings, and then, after such property is devoted to a public use, to permit it to dissolve and thus transfer by operation of law to its sole stockholder this property freed from the public use. We believe the proper rule is that any transfer of public utility property devoted to a public use can be accomplished only by consent of the Railroad Commission. After it has secured such consent it may then dissolve without the consent of the Commission. In other words, as a condition precedent to the dissolution proceedings the public utility must first secure from the Commission approval of a transfer of its assets. In the present case it is true the parties acted in good faith. They first attempted to transfer the assets of Valley Pipe Line Company to Shell Company of California. That transfer, however, for reasons already stated, was void. For that corporation to seek dissolution while still owning property devoted to a public use, without disclosing that fact to the Superior Court, was a legal fraud upon that court, rendering the decree, in so far as it purported to expressly or by operation of law transfer the property of the company devoted to a public use, subject to collateral attack.

 Even if it be conceded that the legal effect of the dissolution was to transfer the properties of Valley Pipe Line Company to Shell Oil Company, such concession would not

assist respondent. This is so because for the purposes of this appeal we must presume that the Valley Pipe Line Company secured the Slater easement for and devoted it to a public use, and we must further presume that Shell Oil Company has devoted the property to a private use. During the course of the trial, while Mr. Lewin, former General Manager and Secretary of the Valley Pipe Line Company, and former Secretary of Shell Oil Company, was on the stand, called as a witness for plaintiff, counsel for plaintiff asked the witness certain questions directed to the point as to whether Shell Oil Company was a public utility, and whether it had held itself out as a public utility. During the course of the discussion the following occurred: ''The Court: Your purpose is to show that the Shell Oil Company was not a public utility. Mr. Elkington: Yes. Mr. Wright (Counsel for respondent) : We will stipulate that the Shell Oil Company was not a public utility, never was and never has been. Mr. Elkington: Very well, I will accept the stipulation. All right, I have no further questions.''

In view of this stipulation, and in view of the evidence, for the purposes of this appeal it must be taken as a fact that Shell Oil Company at no time held itself out as a public utility, and at no time devoted the right of way to a public use. Stated another way, on this appeal it must be conclusively presumed that Shell Oil Company devoted the Slater right of way to a private use. As already pointed out, whether property has been devoted to a public use is a question of fact. For the purposes of this appeal, in view of the stipulation, it must be held that the evidence demonstrates the Shell Oil Company and the Valley Pipe Line Company intended that, by the attempted transfer and dissolution, the public purpose to which the Slater easement had been devoted should cease and terminate. If this reasoning be sound, and we think it is, then where the public use has terminated or been abandoned the easement terminates and the property reverts to the grantors. This would not affect the first pipe line, the Shell Oil Company having acquired title to that line by adverse possession. ■ It is well-settled that where a utility acquires an easement (as distinguished from a fee simple title) in the nature of a right of way for a public purpose, the abandonment of the public purpose terminates the ease-

ment and the easement reverts. (*Northern Pac. Ry. Co.* v. *Townsend,* 190 U. S. 267 [23 Sup. Ct. 671, 47 L. Ed. 1044]; *Barton* v. *Jarvis,* 218 Ky. 239 [291 S. W. 38]; *Simons* v. *Munch,* 115 Minn. 360 [132 N. W. 321]; *Chicago & N. W. Ry. Co.* v. *Sioux City Stockyards Co.,* 176 Iowa, 659 [158 N. W. 769]; *Abercrombie* v. *Simmons,* 71 Kan. 538 [81 Pac. 208, 114 Am. St. Rep. 509, 6 Ann. Cas. 239, 1 L. R. A. (N. S.) 806]; *Robertson* v. *Bertha Mineral Co.,* 128 Va. 93 [104 S. E. 832]; *Railroad Company* ·v. *Mecartney,* 104 Cal. 616 [38 Pac. 448].) In the application of this rule it makes no difference whether the easement was gained by grant or by exercise of the right of eminent domain. (*Hill* v. *Woodward,* 100 Miss. 879 [57 So. 294, Ann. Cas. 1914A, 390, 39 L. R. A. (N. S.) 538]; *Smith* v. *Hall,* 103 Iowa, 95 [72 N. W. 427]; *Abercrombie* v. *Simmons, supra.*) Whether or not there has been an abandonment of the public use is a question of fact. (*Utt* v. *Frey,* 106 Cal. 392, 397 [39 Pac. 807]; *Turner* v. *Markham,* 155 Cal. 562 [102 Pac. 272]; *Daman* v. *Hunt,* 47 Cal. App. 274 [191 Pac. 376].) In view of the stipulation above-referred to, and in view of the evidence, it must be held that the plaintiff proved a *prima facie* case of abandonment.

Respondent now urges that, if the Valley Pipe Line Company held the easement subject to a public use, Shell Oil Company holds it subject to the same use, and that there has, in fact, been no change in the use. It is urged also that, if the statutory provisions above-referred to made the Valley Pipe Line Company a public utility, they also operated to make Shell Oil Company a public utility. These arguments are unsound. ■ Whatever legal effect the statutes may have on the two corporations, it is clear that whether a corporation has held itself out as a public utility, whether a public use has been abandoned, and whether the existing use is public or private, under the situation here presented, are questions of fact. Even if Shell Oil Company became a public utility by operation of the statutes, whether it has abandoned the public use of the pipe line is a question of fact. Moreover, even if the Shell Oil Company became a public utility as to the first pipe line, whether that status also attached to the second pipe line, under the circumstances here involved, is a question of fact.

The other matters urged by respondent are matters of defense which may be developed on the new trial.

The order and judgment appealed from are reversed.

Knight, J., and Ward, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 17, 1940, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 15, 1940.