[Civ. No. 12955. First Dist., Div. One. Apr. 12, 1946.]

TAMALPAIS LAND AND WATER COMPANY (a Corporation) et al., Appellants, v. NORTHWESTERN PACIFIC RAILROAD COMPANY (a Corporation) et al., Respondents.

918

Sterling Carr, Louis J. Glicksberg and A. Dal Thomson for Appellants.

Lawrence L. Howe for Respondents.

PETERS, P. J.—Plaintiffs appeal from a judgment rendered upon a directed verdict in favor of defendants in an

action brought by plaintiffs to recover and quiet title to certain real property in Mill Valley, Marin County.

The rules applicable to the power of a trial court to direct a verdict are well settled and are not here in dispute. ▮ A verdict may be directed for defendant only when, disregarding all conflicts in the evidence, and after indulging in every legitimate inference that may be drawn from the evidence, there is no substantial evidence to support a verdict in favor of plaintiff. (*Estate of Flood,* 217 Cal. 763 [21 P.2d 579]; *Estate of Sharon,* 179 Cal. 447 [177 P. 283]; *Estate of Lances,* 216 Cal. 397 [14 P.2d 768]; *United Air Services, Ltd.* v. *Sampson,* 30 Cal.App.2d 135 [86 P.2d 366]; *Barthelmess* v. *Cavalier,* 2 Cal.App.2d 477 [38 P.2d 484]; *Berger* v. *Lane,* 190 Cal. 443 [213 P. 45].)

Tested by these standards the evidence most favorable to plaintiffs shows that prior to October 23, 1893, the Tamalpais Land and Water Company, one of the plaintiffs, had become the owner of large tracts of land in and about Mill Valley. The corporation desired to subdivide these lands. At that time there was no railroad running to Mill Valley. On the above date the corporation deeded to North Pacific Coast Railroad Company certain real property, or rights in real property, for the purpose of maintaining and operating a railroad over said lands. In addition, the grantor paid the grantee somewhere between $20,000 and $30,000 to defray the cost of grading, and to otherwise finance in part the construction of the railroad into Mill Valley. This deed embraces the property used for a portion of the right-of-way on the Mill Valley branch line and also includes the property upon which the Mill Valley passenger station now stands.

In 1902 the North Pacific Coast Railroad Company conveyed the property or rights covered by this deed to the North Shore Railroad Company. In August, 1904, the Tamalpais Land and Water Company conveyed additional property or rights in property to the North Shore Railroad Company. This deed embraces property used as a site for a freight house, and is still used for that purpose.

In December, 1906, the Northwestern Pacific Railroad Company, one of the defendants, purchased these parcels of land or rights included within these two recorded deeds from the North Shore Railroad Company.

The defendants constructed a branch line railroad leading to Mill Valley in part over the right-of-way covered by these

deeds and built on said lands a passenger station and a freight house. It is admitted that until March, 1941, the defendants operated a daily passenger service to and from Mill Valley over this line, and also maintained a daily freight service (except for Sundays and holidays) over this line. It is also admitted that in March, 1941, the defendants, with Railroad Commission approval, completely discontinued passenger service and that no passenger service of any kind has been operated since that date over the branch line and that none is contemplated. It is also admitted that since that date regularly scheduled freight service has also been discontinued. The evidence shows, however, that since that date and continuing to the date of trial, the defendants have maintained a freight service, on an "on call" basis over the line. This service is mainly for full carload lots and is used principally by three firms in Mill Valley. The evidence shows that in 1941 the defendants moved 135 cars over the branch line on their "on call" service; in 1942 84 cars were so moved; in 1943 155 cars, while in 1944 102 such cars were moved over the line. Since 1941 in most cases less than carload lots have been handled by a trucking company wholly owned by the defendant Southern Pacific Company and known as Pacific Motor Transport Company. This freight was handled by the trucking concern for the account of the railroad company and was moved under the latter's billing and tariffs. Such freight, of course, moves over the public highways.

In September, 1940, shortly before passenger service was discontinued, the Northwestern Pacific leased to the Pacific Greyhound Company, an independent corporation, the greater portion of its Mill Valley passenger station building, reserving to the railroad a small portion of the building for the use of its station agent, and also leased to the Greyhound a portion of the grounds adjacent to the station and included within the 1893 deed for a parking place for the busses. This lease was for a period of thirty days, subject to renewal thereafter for thirty days' terms, but not to exceed an aggregate of five years. The lease contains a provision that it might be canceled upon thirty days' notice and a provision that the lessor reserves the right to use the leased premises in common with the lessee for railroad and station purposes. The Greyhound has occupied the area in question under such lease since 1941 and was in possession thereunder at the time of trial. The railroad, as already pointed out, reserved one room in the

leased station which has been continuously occupied by a station agent employed by it. This station agent furnishes information to the public with respect to rail fares, train connections and tariffs; makes pullman reservations and sells interline rail passenger tickets; receives freight claims; receives and executes requests for furnishing of cars to the shipping public in Mill Valley; and originates and receives company telephone calls including train orders. Also included within this area is an underground conduit containing telephone wires and no longer used telegraph wires, the telephone wires forming part of the telephone communications system of the railroad company.

The railroad passenger station, as already pointed out, was constructed at the end of the branch line on an irregularly shaped parcel of land covered by the 1893 deed, and adjoining Throckmorton-Blythedale Avenues. As originally constructed there were three separate tracks leading to the vicinity of the passenger station and ending there. In 1941 and 1942 the defendants retired and tore up a portion of these tracks. The defendants admit in their briefs that the evidence shows that they tore up about 100 feet of track from the ends of two of these lines and over 400 feet from the end of the other track. Plaintiffs' evidence was that somewhat a larger amount of track was torn up. The result is that the passenger station at the end of the line is now cut off from immediate rail connection. The freight house, which is located some distance from the passenger station, still adjoins the existing rails. At the end of the line there is an irregularly shaped area, all included within the 1893 deed, over which the rails do not run, but on which the station is still located, and under a portion of which the underground conduit still runs. This area approximates 200 feet by 180 feet or a little larger but is not square, and in this area there are no rails, and defendants do not contend that there is any intent to ever have rails cross this area.

The complaint is entitled ''Complaint to Quiet Title and for Recovery of Real Property.'' At the trial and in their opening briefs it was the theory of the plaintiffs that the two deeds involved conveyed the fees subject to conditions subsequent and that such conditions having been violated the fees revert. In their reply brief it is urged that the deeds conveyed an easement for railroad purposes, which easement has terminated by reason of nonuser.

The deeds in question are somewhat lengthy documents. The 1893 deed provides that the Tamalpais Land and Water Company "for and in consideration of the acceptance of this conveyance" by the North Pacific Coast Railroad Company "subject to the reservations and provisos and upon the conditions hereinafter mentioned and expressed and for other good and sufficient considerations has granted and by these presents does grant unto the said party of the second part . . . but upon and subject to the said reservations provisos and conditions and for the uses and purposes hereinafter designated and stipulated and none other" the lands covered by the deed, "for the maintenance and operation of a Railroad upon and over said lands in conjunction and connection with the main line of said party of the second part . . . To have and to Hold . . . for the uses and purposes aforesaid and none other and for so long as said railroad shall be so maintained and operated and no longer." It is further provided that if the grantee or its successors "should at any time fail or cease to maintain and operate said railroad as hereinbefore stipulated then it will at once on demand surrender and deliver up the possession of said land and every part thereof to the party of the first part or its assigns."

The 1904 deed provides that the grantor "in consideration of the covenants on the part of the said party of the second part hereinafter contained, subject to the reservations and provisos and upon the conditions hereinafter mentioned and expressed, and for other good and sufficient considerations has granted, and by these presents does grant" to the grantee and its successors "but upon and subject to the reservations and conditions and for the uses and purposes hereinafter designated and stipulated, and none other, and while devoted to those uses and purposes" certain described real property. "The Sole Uses and Purposes for which the said parcels of land are hereby conveyed are as follows, to wit: For the maintenance and operation of a railroad upon and over said lands, in conjunction with the main line of said party of the second part, and for the construction and maintenance of a freight shed or sheds or other terminal facilities for railroad purposes . . . To Have and to Hold, . . . for the uses and purposes aforesaid and none other, and for so long as a railroad shall be maintained and operated thereon . . . and no longer."

The plaintiffs produced some evidence that the original

grant was for the main purpose of securing passenger rail service to Mill Valley. Their evidence was very weak on this issue and they entirely failed to prove that the Northwestern Pacific Railroad Company, the successor of the original grantees, had any notice of any oral or other understanding between the grantor and grantees other than the deeds themselves.

It is the theory of the plaintiffs that whether or not the operation of the intermittent freight service constituted an abandonment was a question of fact that should have been submitted to the jury. Further, plaintiffs contend that, even if the operation of the intermittent freight service does constitute a compliance with the deeds, the evidence was sufficient to go to the jury on the question as to whether there was an abandonment of a part of the granted lands at the end of the line where the rails have been torn up.

The trial court was of the view that as long as the intermittent freight service was admittedly maintained there was a compliance with the deeds, and further, was apparently of the view that service by busses was substantial performance of the conditions contained in the deeds. However, the exact theory of the trial court in directing the verdict is by no means clear. After the argument on the motion for a directed verdict the trial court stated: "I think that the purposes that the contracting parties had in mind are being carried out, not quite in the same way as they were set out then, but at that time it was the only way known, and the grantor of the —The Tamalpais Land and Water Company wished to subdivide a lot of property and make a town site there and induce people to come and give them transportation, and the only way known then was railroad transportation. In that situation there is insufficient breach of the condition subsequent to warrant forfeiture . . . Mr. Carr: . . . I will be correct, Your Honor, in presuming the basis of Your Honor's ruling is you find the operation of the Greyhound is sufficient operation under the covenants in the deed which—— The Court: I don't make that holding as a matter of law, but I feel it is an element to be considered and that the railroad company was aware that the passengers were being carried, which was the object in view of the contracting parties forty or fifty years ago."

■ If the trial court was of the view that, even if the deeds, whether granting easements or fees subject to conditions,

called for the operation and maintenance of passenger service, that then service by bus over a different right-of-way constituted substantial performance of the provisions in the deeds, it was clearly in error. When land is conveyed to a railroad, whether by way of a debased fee or by way of easement, for the purpose of operating a railroad over the lands it certainly is not substantial performance of the deed provisions to abandon the railroad and to substitute service by a different corporation that has no interest in the lands over a different right-of-way. The respondents do not attempt to sustain any such theory. ▮▮▮ It is their contention that the discontinuance of the passenger service did not constitute a breach of any of the provisions of the deeds. With this contention we agree. The two deeds do not specify the character, frequency or type of railroad service to be rendered. So far as the terms of the deeds are concerned they simply required the grantees and their successors to maintain and operate a railroad over and across the property conveyed. Whatever understandings or agreements the original grantor-grantees may have had beyond what was set forth in the deeds are not here relevant. The Northwestern Pacific Railroad Company was not the original grantee, was not a party to any side agreement, and, so far as the record shows, had no knowledge of any such agreement. So far as the record shows it purchased the rights of the original grantees without notice of any side agreement. Its obligations must be measured by the provisions of the deeds. Those deeds merely required the grantees or their successors to maintain and operate a railroad upon or over the deeded lands. ▮▮▮ Whether the deeds conveyed easements or fee titles subject to conditions subsequent is immaterial on this phase of the case. In either event the deeds must be construed in favor of the grantees or their successors. (Civ. Code, § 1069.) ▮▮▮ The burden rested on the plaintiff to show a violation of the deed provisions. This burden was not sustained. ▮▮▮ While the intermittent freight service now operating may not have been what the original parties had in mind, these parties reduced their agreements to writing, and in those writings required only that the grantees maintain and operate a railroad over the granted lands. A railroad is being so maintained. In *Behlow* v. *Southern Pac. R. R. Co.*, 130 Cal. 16 [62 P. 295], the conveyance was in fee "for railroad purposes only," and if not so used the lands to revert. The original grantee erected a railroad and operated daily

freight and passenger service. Thereafter the Southern Pacific purchased the deeded lands and operated only intermittent gravel trains over the line. It was held that no reversion took place. At page 19 the court used the following language, which is equally applicable to the present case: "Upon the fact thus stipulated it must be held that a breach of the condition named in the grant has not been shown. The terms of that condition do not limit or define the extent of the use, or the character or frequency of the trains that are to be operated over the land; and it cannot be maintained as a proposition of law that the running of gravel trains, as aforesaid, is not a use of the land for railroad purposes."

Plaintiffs place considerable reliance on the case of *Rosecrans* v. *Pacific Elec. Ry. Co.*, 21 Cal.2d 602 [134 P.2d 245], in support of their contention that whether the defendants have abandoned the railroad for railroad purposes as provided in the deeds was a question of fact that should have been submitted to the jury. The Rosecrans case, under the facts there involved, so held and so held correctly. But in that case the deed contained detailed and positive conditions imposing upon the grantee and its successors the duty to operate not less than eighteen daily local passenger trains in each direction over the line, with specific directions set forth in the deed for the reception and discharge of passengers at indicated points. The grantee gave such service for thirty-two years and then completely abandoned all service over the road. The grantor contended a reversion had taken place. The trial court sustained a demurrer to the grantor's complaint, evidently on the theory that thirty-two years of compliance as a matter of law constituted either literal or substantial compliance with the provisions of the deed. The Supreme Court properly held that the deed expressly required perpetual passenger service and that therefore the complaint stated a cause of action.

That case has no application to the facts of the instant case where the obligation was to maintain and operate a railroad, without specification of the extent, kind or quality of service. The Rosecrans case undoubtedly supports the view that the obligation assumed by the acceptance of the deeds in the instant case was to operate a railroad, perpetually, over the granted lands, but the Rosecrans case does not help in determining what the extent of the assumed obligation was. Applying the identical rules of construction set forth at

length in the Rosecrans case it must be held in the instant case that the grantees and their successor merely agreed to use the lands for the maintenance and operation of a railroad thereon. As long as the defendants continue to use the lands in good faith for railroad purposes they have complied with the requirements of the deeds. The evidence of plaintiffs having shown that the railroad was operated on an "on call" basis for freight purposes to a substantial degree the defendants were entitled to a directed verdict on this issue.

██ But the determination that the intermittent freight service here shown to exist, as a matter of law, shows compliance with the deed provisions, does not settle all of the issues in this case. As already pointed out, the grantees and their successors constructed the railroad over the granted lands and operated the same for many years. A passenger station was constructed at the end of the line on land included within the 1893 deed. Over the course of time three separate tracks were constructed that led to this passenger station and ended there. When passenger service was discontinued the railroad retired and tore up a portion of their tracks so that the passenger station is now completely cut off from any immediate rail connection. There is a substantial area at the end of the line over which no rails at all run, but on part of which the station still stands. It is this station and the area surrounding it that have been leased to the Greyhound as a bus station and for bus parking purposes, reserving to the railroad one room used by it for a station agent who renders the services heretofore described. The plaintiffs contend that even if the intermittent freight service constitutes a compliance with the deeds (and we have held it does) that this area is not used at all, and as to it there has been a partial abandonment. We are of the opinion that this contention presents a fact question that should have been submitted to the jury.

██ The plaintiffs contend that the 1893 deed conveyed an easement and not a fee subject to a condition subsequent. There is considerable merit in this contention. In the first place it is an admitted fact that the grantees of these deeds paid nothing for the conveyance, in fact, the grantor paid the grantees between $20,000 and $30,000 to help defray the cost of the construction of the railroad. This is a matter of considerable importance in construing a deed. If a deed is ambiguous as to whether it conveys a fee subject to a condition subsequent or an easement, the cases are quite uniform

that the fact no monetary consideration, or only a nominal monetary consideration was paid for the grant is a factor of considerable importance indicating that the grant conveys an easement and not a limited fee. (*Rogers* v. *Pitchford*, 181 Ga. 845 [184 S.E. 623]; *Noel Estate* v. *Kansas City Southern & Gulf Ry. Co.*, 187 La. 717 [175 So. 468]; *Hodges* v. *Owings*, 178 Md. 300 [13 A.2d 338]; see, also, Restatement of Property (Servitudes), § 471, comment f.)

The question is obviously one of intent to be gathered from the language of the conveyance and the surrounding circumstances. The problem is exhaustively discussed in an annotation in 132 American Law Reports 142 entitled "Deed to railroad company as conveying fee or easement," where many cases are collected and commented upon. Cases are there collected to show that even where a deed contains language that is normally used in connection with a grant of a fee, and contains a reversionary clause, it will nevertheless be construed as granting an easement and not a fee if the deed clearly indicates that the purpose of the grant was to convey the property for railroad purposes only. Particularly is this so if no monetary consideration has been paid for the conveyance. Many of the cases contain granting clauses much broader than the deed here involved. (See *Barlow* v. *Chicago, Rock Island & Pacific Railroad Co.*, 29 Iowa 276; *Barton* v. *Jarvis*, 218 Ky. 239 [291 S.W. 38]; *Laurel County* v. *Howard*, 189 Ky. 221 [224 S.W. 762]; *Noel Estate* v. *Kansas City Southern & Gulf Ry. Co.*, 187 La. 717 [175 So. 468]; *Clevenger* v. *Chicago, M. & St. P. Ry. Co.* (Mo.), 210 S.W. 867; *St. Louis-San Francisco Ry. Co.* v. *White*, 199 Ark. 56 [132 S.W. 2d 807]; *Keokuk County* v. *Reinier*, 227 Iowa 499 [288 N.W. 676]; *Chicago Great Western R. Co.* v. *Zahner*, 145 Minn. 312 [177 N.W. 350]; see comment on these cases 132 A.L.R. 159-163; for comment on cases holding designation of purpose of conveyance alone not controlling, see 132 A.L.R. 163-168.)

The present deed is not clear as to the nature of the estate granted. It grants to the named grantee and its successors certain described lands subject to certain provisos and conditions "for the uses and purposes hereinafter designated and stipulated and none other." Those uses and purposes are "for the maintenance and operation of a Railroad upon and over said lands." The deed provides that the grantee is to have and to hold said lands "for the uses and purposes

aforesaid and none other and for so long as said railroad shall be so maintained and operated and no longer." It is then provided that if the grantee "fail or cease to maintain and operate said railroad as hereinbefore stipulated then it will at once on demand surrender and deliver up the possession of said land" to the grantor. This language is far more indicative of an intent to grant an easement for the designated purposes than it is to grant a fee subject to a condition subsequent. When the further facts are considered that not only was no monetary consideration paid for the conveyance but that the grantor paid a large sum to the grantee to defray in part the cost of construction, the conclusion seems almost inescapable that the parties intended to convey an easement and not a limited fee. We do not find it necessary to decide, however, at least as a matter of law, whether the 1893 deed conveyed an easement or a conditional fee. ■ While it is true that the rules of construction require a much stricter interpretation against the grantee of a condition subsequent involving a forfeiture than of an easement, the true rule, as pointed out in *Rosecrans* v. *Pacific Elec. Ry. Co.*, 21 Cal.2d 602, 606 [134 P.2d 245], is that even in the case of a condition it must be interpreted "in the light of the deed as a whole in order to ascertain the intention of the parties."

■ If the 1893 deed conveyed a fee subject to a condition subsequent, in a proper case there can be a partial violation and a partial reversion. On the other hand, if it conveyed a mere easement, the law is well settled that there can be a partial extinguishment of such easement. (See Restatement of Property (Servitudes), chapter 41, p. 3060, Introductory Note.) There are many cases where the courts have held, in reference to deeds conveying property rights to a railroad, that a partial abandonment extinguishes so much of the right as has been abandoned. (See 28 C.J.S., p. 722, § 58; Jones on Easements, p. 682, § 852; *Louisville & Nashville Railroad Co.* v. *Covington*, 65 Ky. 526 (2 Bush 526) ; *Mobile, J. & K. C. R. Co.* v. *Kamper*, 88 Miss. 817 [41 So. 513].) One of the most interesting and best reasoned cases on this subject is *Atlantic Coast Line R. Co.* v. *Sweat*, 177 Ga. 698 [171 S.E. 123]. In that case certain lands were conveyed to the railroad for the construction of a railroad thereon, the grantee to retain the lands for so long as it or its "successors and assigns, shall maintain and use said road; but to revert to the said party of the first part whenever said road shall be abandoned." In

the amended complaint it was alleged that the railroad had constructed the road and thereafter abandoned a portion. The court held that the plaintiff could recover the portion abandoned even though the balance was being used for railroad purposes. The court stated (p. 130 [171 S.E.]) : "While upon a technical construction of the contract it might be considered as entire and not divisible, so that the railroad company would not lose its claim to any part of the right of way so long as it maintained and used substantially all of it, yet, when there was a definite and positive nonuser by the railroad company of a particular segment of the right of way formerly occupied by it, the company itself is responsible for the severance, and will not be heard to say that the contract is indivisible. An entire contract may be apportioned in some cases."

There is nothing in any of the cases cited by defendants that suggests, far less compels, a contrary view. The case of *Reclamation District* v. *Van Loben Sels,* 145 Cal. 181 [78 P. 638], cited apparently to support the contention that, as a matter of law, the tearing up of the tracks at the terminal did not constitute a partial abandonment, supports no such theory. In that case there was a change in the nature of the use. The land had been conveyed for reclamation purposes. The trial court found as a fact that the new uses were reclamation purposes within the meaning of the deed. The Supreme Court held the finding was supported. The case, in fact, supports the theory of this opinion that the basic question involved is one of fact and not of law. The other cases cited on this point are equally inapplicable.

The defendants argue that the only obligation assumed by them was to operate and to maintain a railroad on the conveyed property, and that they were not required, under penalty of forfeiture, to physically occupy and actively use every square foot of the premises as a roadbed or in the operation of the railroad. It is therefore contended that the tearing up of the terminal tracks near the passenger station did not amount to an abandonment of that area for railroad purposes. It is, of course, true that the grantee or its successor was not required to use every square foot of the conveyed area for a roadbed or other railroad purposes. But the fallacy in the defendants' arguments is that here the parties over a period of more than 40 years have construed the nature of the obligation assumed by the grantee. The road

was constructed with three tracks leading to Throckmorton-Blythedale Avenues. Those tracks were maintained for many years. The parties, and particularly the grantee, construed the deed as obligating it to construct the railroad to that point. Now the defendants, by their own acts, have subdivided what otherwise was a grant of an entire area. (See *Dickson* v. *St. Louis & K. R. Co.*, 168 Mo. 90 [67 S.W. 642], for a case emphasizing the importance of practical construction in such cases.) It is the defendants who have torn up the tracks and are now using the terminal area for a use not provided for in the deed. Under such circumstances the contract is clearly divisible and has been made so by the acts of defendants.

██ If there had been a complete abandonment of the terminal area we would have no hesitancy in holding that that area should revert to the grantor as a matter of law under the theory of the above cited cases. But, as already pointed out, although the area, including the station, has been leased to the Greyhound, the defendants have retained one room in the station for its station agent, and have an underground conduit, containing telephone wires, running underneath a portion of the area. The defendants contend that these functions are railroad purposes, and that, as a matter of law, they constitute a compliance with the provisions of the deed. The problem is not so simple. While the maintenance of a station agent and a telephone line are undoubtedly railroad purposes, the deed here involved did not convey the lands for any and all railroad purposes independent of the operation of a rail line. It conveyed the lands for certain purposes and "none other," namely, "for the maintenance and operation of a Railroad upon and over said lands" and "for so long as said railroad shall be so maintained and operated and no longer." While the maintenance of the station agent and the underground wire were undoubtedly proper uses as incidents to the passenger and freight lines as long as those lines were so used, when the passenger service was discontinued and the tracks torn up, the question immediately becomes pertinent as to whether such uses, independent of the passenger service and disconnected from the freight tracks, falls within the meaning of the deed. That is a question of fact to be determined from the face of the deed, and from the surrounding circumstances including what the parties have done under the deed. ██ It is a general rule

that the question of whether there has or has not been an abandonment is one of fact and not of law. ` (*Slater* v. *Shell Oil Co.*, 39 Cal.App.2d 535 [103 P.2d 1043] ; *Utt* v. *Frey*, 106 Cal. 392 [39 P. 807] ; *Turner* v. *Markham*, 155 Cal. 562 [102 P. 272] ; *Daman* v. *Hunt*, 47 Cal.App. 274 [191 P. 376].) That rule has particular force here. ▮ It certainly is a question of fact and not of law as to whether this terminal area is being used for purposes provided for in the deeds.  For this reason it was error of a most serious and prejudicial nature to direct a verdict on this issue.  The cause must be reversed to permit this issue to be decided as a fact.

▮ Defendants contend that this is an action to quiet title and that there is no positive allegation that either of the plaintiffs have an interest in the property.  The complaint was framed on the theory that one or the other plaintiff owned the property but that plaintiffs were not sure which one owned it.  The complaint alleges that plaintiff Tamalpais Land and Water Company was the owner of the properties described in the 1893 and 1904 deeds, and in those years conveyed them to the named grantees by deeds reserving certain described rights in the grantor.  It is then alleged that in 1908 plaintiff Tamalpais Land and Water Company conveyed to Ralston L. White certain real property rights; that Ralston has died and Ruth B. White is his executrix; that Ruth B. White is uncertain as to the extent of the grant and does not know whether it includes any of the reversionary rights contained in the 1893 and 1904 deeds; that for this reason both plaintiffs are joined so that on the trial the rights of the parties may be determined.  These allegations, while not as clear as might be desired, are sufficient to avoid a judgment on the pleadings or a general demurrer.  The motion for a directed verdict certainly cannot serve the office of a special demurrer.

It is also contended that plaintiffs have no cause of action to recover possession of the reversionary interest, but at most an action for damages, because, so it is contended, the land is devoted to a public use.  That is a matter of defense that will depend on the evidence.  It certainly cannot be held, as a matter of law, that the grantee or its successor in interest is devoting the terminal land to a public use.  If it should be found as a fact that a partial abandonment has occurred, the successor in interest cannot prevail on such a defense.

The judgment appealed from is reversed.

Ward, J., and Schottky, J. pro tem., concurred.

A petition for a rehearing was denied May 11, 1946, and the following opinion then rendered:

THE COURT.—The sole point made by respondents in their petition for rehearing is that this court failed to pass on their contention that the evidence failed to show that the plaintiffs or either of them owned the rights here involved. As already pointed out in the opinion, the theory of the complaint was that either the Tamalpais Land and Water Company, or Ruth B. White, as executrix of the will of Ralston L. White, owned the interests involved. The opinion holds that the pleading is sufficient. The evidence sustains the allegations of the pleading. There was introduced into evidence as plaintiffs' Exhibit 3 a deed executed in 1908 from the corporate defendant to Ralston L. White. Plaintiffs are in doubt as to whether that deed conveyed the interests here involved. If it did, the estate of Ralston L. White owns the interests; if it did not the corporate defendant owns them. The trial court has not passed on that issue and was not called upon to pass upon it on the motion for a directed verdict. It is for the trial court, in the first instance, to interpret the deed in question. The evidence was sufficient to avoid a directed verdict. The petition for rehearing is denied.