816 P.2d 525

**Bess G. THOMAS, et al., Plaintiffs–Appellees and Cross–Appellants,**

v.

**CITY OF SANTA FE, et al., Defendants–Appellants and Cross–Appellees.**

No. 11017.

Court of Appeals of New Mexico.

June 25, 1991.

Certiorari Denied July 31, 1991.

Floyd Wilson, Pongetti, Wilson & Pryor, P.C., Albuquerque, for plaintiffs-appellees cross-appellants.

James C. McKay, City Atty., Santa Fe, for defendants-appellants cross-appellees.

## OPINION

APODACA, Judge.

This appeal and cross-appeal both involve the respective rights of the parties to certain land located adjacent to the Santa Fe municipal airport. The City of Santa Fe (city) appeals the trial court's decision allowing a partial reversion of the subject property, purchased by the city in 1941, to the grantors' children (plaintiffs) because of the purported failure of the city to use the property for "airport purposes" as specified in the deed in question. Plaintiffs cross-appeal the trial court's refusal to uphold plaintiffs' claim of reversion to a separate tract of land that was the subject of another, later revised condition subsequent. Both parties raise the issue of the interpretation of the two conditions subsequent and whether the language and intent of the parties permitted partial reversion. Plaintiffs also argue that the city failed to preserve certain issues. Determining that the trial court erred in ordering the partial reversion, we reverse on the issue raised by the city's appeal. We affirm on the cross-appeal, concluding the trial court did not err in disallowing partial reversion with respect to the separate tract.

## FACTS

In 1941, plaintiffs' predecessors sold certain land to the city. At trial, the parties referred to four different tracts, but the maps submitted as exhibits show the four constitute two distinct larger tracts. For simplicity, we refer to the subject land as consisting of these two larger tracts. The city paid $5.00 per acre for the tracts. However, there is nothing in the record concerning the fair market value of the property at the time of sale. The city bought the tracts, as well as other land belonging to other individuals, to construct the municipal airport.

The deed consummating the sale contained the following language:

Provided always, and it is hereby made a provision and restriction of this conveyance that if the property herein above described should cease to be used for airport purposes, or in connection with the maintenance and operation of an airport on adjoining lands, * * * it shall be lawful for the [plaintiffs] * * * into and upon all and singular the said premises to enter * * * to hold and enjoy in the same manner as if this conveyance had never been made and executed.

After purchasing the tracts, the city constructed the airport. A small portion of one of the tracts contains parts of one runway and two taxiways. Portions of both tracts are located within "clear zones" and building restriction lines extending beyond the ends of two runways. These zones are necessary to ensure safe landings and takeoffs. The airport's security fence crosses both tracts. This barbed-wire fence is intended to keep cattle and other animals off the runways.

Twenty years later, in 1961, the city, in need of land for a sewage plant, approached plaintiffs concerning the possibility of using a portion of one of the tracts for that purpose, without risking forfeiture for violation of the condition subsequent contained in the 1941 deed. Plaintiffs agreed to the new use, and the parties then signed a document entitled "Release and Relinquishment of Reversionary Right."

The release applied only to the specific portion of the tract earmarked for the sewage plant. The plant was constructed and is presently operating. It does not physically occupy the entire portion of property designated for sewage plant use. The relinquishment document contained language indicating that the document would not be a release of reversionary rights "in so far as the use for any purposes other than airport purposes or sewage disposal plant purposes are concerned."

In the mid–1980's, plaintiffs filed a quiet title action to enforce their power to terminate, claiming the city was not using large portions of the two tracts for airport purposes. At trial, they conceded that the portions of the tracts located within the clear zones and building restriction lines were being used for airport purposes and withdrew their claims to those portions. They argued, however, that the condition subsequent was divisible and that the unused remainder of the tracts was subject to their power of termination, even if portions of the tracts were being properly used. Plaintiffs also argued that the parts of the sewage plant tract that were not physically occupied by the plant and its surrounding fence should likewise revert.

The trial court concluded that the condition subsequent contained in the 1941 deed was divisible, and that it was proper for portions of the tracts to revert. The court held that those portions of the tracts located outside the airport's security fence were not being used for airport purposes or in connection with the maintenance and operation of an airport on adjoining lands, and should revert to plaintiffs. The court, however, refused to order reversion of any part of the sewage plant property.

### APPEAL

The city argues that, under the 1941 deed's condition subsequent, only part of the two tracts were required to be used for airport purposes to prevent forfeiture of any portion of the tracts—in essence, the condition was not divisible and partial termination should not be permitted. Alternatively, the city argues it has been using all of both tracts in connection with the opera-

tion of the airport. In response, plaintiffs counter with several arguments. First, they contend that the city did not preserve the partial termination issue below, because the city did not request appropriate findings of fact and conclusions of law on the issue. They next argue that the condition was divisible and partial termination should be allowed. Finally, they maintain there was evidence to support the trial court's determination that the areas outside the security fence were not being used for airport purposes or in connection with the operation of the airport.

■ In support of the preservation argument, plaintiffs direct our attention to the requested findings of fact and conclusions of law filed by the city. The city's first set of requested conclusions included a conclusion that there had been a partial abandonment of the areas outside the security fence.

However, after these requested findings and conclusions were submitted, the trial court wrote a letter to the parties, requesting that several issues be briefed. One of the issues was "[w]hether the condition subsequent [was] divisible[,] i.e. whether partial reversion [was] allowed by law." The city then submitted a brief, arguing that the condition was not divisible. The city also submitted amended proposed findings and conclusions, which omitted the request that the court find that a partial abandonment had occurred. These amended findings and conclusions superseded those originally submitted and eliminated the invited error aspect of the partial forfeiture issue. It was clear from the trial court's letter that the question of partial forfeiture remained at issue, insofar as the court was concerned. Likewise, it was clear from the city's brief and amended findings and conclusions that it did not ultimately concede the issue.

Plaintiffs also argue that the city failed to request specific findings and conclusions on the partial reversion issue. It is true that none of the proposed amended findings or conclusions included the terms "partial reversion" or "divisibility." The city did, however, request findings on each

parcel of land involved in the lawsuit. These findings essentially requested the trial court to find that each parcel was being used for airport purposes because, for example, the property "include[d] land within the clear zone for Runway 20 and within the building restriction line applicable to Runway 20," or "contain[ed] a security fence to keep off all intruders." Use of the words "include[d]" and "contain[ed]" in these requested findings indicates to us that the trial court was being requested to disallow reversion, even though not all of the property was within a building restriction line or enclosed by the security fence. Additionally, the trial court was apparently well aware of the issue of partial reversion and of the city's position on that issue, because of the city's brief addressing it.

■ Although we believe the requested findings, together with the city's brief, could be considered adequate to have preserved the partial reversion issue, we need not decide that question for the following reason. Even if proper requested findings had not been submitted, we may review the trial court's findings of fact and conclusions of law to determine whether the conclusions appropriately flowed from the findings of fact made. *Gonzales v. Garcia*, 89 N.M. 337, 552 P.2d 468 (1976). The trial court here entered a number of findings and reached conclusions of law based on those findings. One conclusion was that partial reversion should be allowed, given the language of the condition subsequent in the 1941 deed and the circumstances of this case. That conclusion is reviewable even if the city's requested findings are deemed inadequate. *Id.; see Blea v. Sandoval*, 107 N.M. 554, 761 P.2d 432 (Ct.App.1988) (in the absence of requested findings, appellate court will not review evidence but may review trial court's decision to determine whether it is legally correct).

■ Plaintiffs challenge the adequacy of the city's preservation of issues in one other respect. They maintain the city did not specifically challenge the trial court's finding of fact No. 16, which states that the parties intended the condition to be divisible. Absent an adequate challenge to that finding, plaintiffs argue, this court is bound by the finding in this appeal. *See* SCRA 1986, 12–213(A)(3). It is true that the city did not specifically state that it challenged the trial court's finding. In its docketing statement, however, the city contended that the trial court's decision regarding partial reversion was incorrect. The city argued that the intention of the parties to the deed should have been ascertained from the language of the deed, viewed in light of the surrounding circumstances, and that the plain language of the deed precluded partial reversion. This is a direct attack on the finding that the parties intended the condition to be divisible, even though that finding is not specifically mentioned.

■ We first observe that, because the only evidence concerning this issue was either documentary or in the form of uncontested facts concerning the circumstances of the transaction, we are not bound by the trial court's finding that the parties intended to allow partial reversion to occur. *See House of Carpets, Inc. v. Mortgage Inv. Co.*, 85 N.M. 560, 514 P.2d 611 (1973) (where evidence consists of documents and stipulated facts, appellate court is in as good a position as the trial court to determine the facts and is not bound by the trial court's findings.)

The city's failure to refer specifically to the finding is a technical violation of Rule 12–213. However, since the city directly attacked the conclusion that partial reversion should occur, as well as the finding on the parties' intent, we are not bound by the finding. *See Ortiz v. Ortiz & Torres Dri-Wall Co.*, 83 N.M. 452, 493 P.2d 418 (Ct. App.1972) (where appellant failed to specifically challenge findings of fact, but did challenge conclusions of law and set forth findings that trial court should have found, technical violation of briefing rule would not prevent review of the issues on appeal).

■ We now address the merits of the issue raised by the city. The city characterizes partial reversion as a "novel theory" and argues that it is unsupported by New Mexico precedent. For that reason,

we must first decide whether partial reversion should be prohibited generally, as a matter of law. That is, should partial reversion be allowed under any circumstances? We see no reason to impose a blanket prohibition against such a theory. Although explicit authority on the question is scant, the few cases that directly address the question appear to favor partial reversion in appropriate circumstances. *See, e.g., Tamalpais Land & Water Co. v. Northwestern Pac. R.R.,* 73 Cal.App.2d 917, 167 P.2d 825 (1946) (approving partial reversion in partial abandonment situation); *Marthens v. Baltimore & O.R.R.,* 170 W.Va. 33, 289 S.E.2d 706 (1982) (discussing factors to be applied to determine whether partial reversion should be allowed); *cf. Village of Larchmont v. City of New Rochelle,* 100 Misc.2d 463, 418 N.Y.S.2d 966 (1979) (abandonment can extinguish an entire easement or only the excess portion).

In a subsequent diversity case applying California law, the Ninth Circuit considered what was meant in *Tamalpais* by "a proper case" for a finding of a partial violation of a condition subsequent allowing a partial reversion. In *Bornholdt v. Southern Pacific Co.,* 327 F.2d 18 (1964), the court held that a railroad's lease of a portion of its land held in fee simple determinable did not work a partial reverter for ceasing to use the land for railroad purposes. The court stated that "[t]he doctrine of partial reversion is based on the court's desire to avoid forfeiture whenever possible and should only be applied when no other means of avoiding a forfeiture are possible." The Ninth Circuit cited *Quatman v. McCray,* 128 Cal. 285, 60 P. 855 (1900), as an example of the use of partial reversion to avoid a total forfeiture. *Quatman* involved a forfeiture provision applicable to several plots of land; the court held that a violation of the provision on a single plot worked a forfeiture of only that plot.

Other courts, faced with land use only partially consistent with a condition subsequent, have reached the same result as *Tamalpais* and *Bornholdt,* holding that the failure to use the entire extent of the land for a required purpose, or the use of part of the land for a purpose other than the required purpose, does not result in a forfeiture. *See Kinney v. State,* 238 Kan. 375, 710 P.2d 1290 (1985); *Johnson v. City of Hackensack,* 200 N.J.Super. 185, 491 A.2d 14 (1985); *Davis v. Skipper,* 125 Tex. 364, 83 S.W.2d 318 (1935); *but see E.C. Brown Co. v. Ontario County,* 123 N.Y.S.2d 546 (1953) (sale of portion of land would cause entire estate to revert). In none of these cases did the court appear to consider the possibility of a partial reversion.

Additionally, there is analogous New Mexico law involving divisibility of a contract, which indicates a contract is divisible if that is the parties' intent. *Arrow Gas Co. v. Lewis,* 71 N.M. 232, 377 P.2d 655 (1962) (where parties contracted to develop irrigation water on two parcels of land, and only one tract was developed, contract was divisible and developers were entitled to one-half ownership of the developed tract). The parties' intent is the key issue, and where the parties have clearly expressed an intent to impose a divisible condition subsequent, we decline to impose a blanket prohibition against such a condition. *Cf. id.* (parties' intent apparent from face of agreement).

■ Having so determined, we next examine the specific circumstances of this appeal to consider whether the condition may be construed as divisible.

Whether a terminating event has occurred involves a determination of two separate questions.... First, the language must be construed to identify the event and, second, a factual determination must be made as to whether the event has occurred.... A condition in a deed which is relied upon to defeat an estate is strictly construed and, when possible, against forfeiture. * * * The violation of a condition which involves forfeiture must be clearly established. * * * "When the event upon which the estate of the transferee is to terminate consists of a failure to use the premises in a particular way, it is clear the courts are reluctant to find a termination."

*Johnson v. City of Hackensack,* 200 N.J.Super. at 190, 491 A.2d at 17.

We next note that the allowance of partial reversion in this appeal would result in a forfeiture of the property purchased by the city. Thus, in construing the condition's language, we interpret the condition most strongly against the grantor. *See Garry v. Atchison, Topeka & Santa Fe Ry.,* 71 N.M. 370, 378 P.2d 609 (1963). We will construe the condition to avoid forfeiture if at all possible. *Id.; Berger v. Santa Fe College,* 28 N.M. 545, 215 P. 825 (1923).

The express language of the condition does not specifically mention the possibility of divisibility or partial forfeiture. Neither does it contain language that would indicate such possibility was considered, such as "if the property *or any portion thereof* should cease to be used for airport purposes, the power of termination may be exercised as to that portion of the property no longer used for airport purposes." Also, the language of the condition is extremely broad. The property may be used not only for "airport purposes", but also in connection with the operation or maintenance of an airport *on adjoining lands.* From this language, it becomes clear to us that the parties did not require the airport to be physically located, even in part, on the tracts plaintiffs sold to the city.

Finally, there was no direct evidence of the parties' intent, in the form of testimony or documentary evidence. The only evidence before the trial court was the language of the deed, which does not indicate expressly that the parties intended to allow partial reversion, and the bare circumstances of the case—that the city needed land for an airport and plaintiffs sold the land to the city. The circumstances surrounding the sale are a proper factor to be considered because the condition's language itself is not conclusive on the issue of intent. *See Kelley v. City of Lakewood,* 644 P.2d 103 (Colo.Ct.App.1982) (where language of condition subsequent is ambiguous, court resorts to other evidence of intent); *Garry v. Atchison, Topeka & Santa Fe Ry.* (parties' intent is to be gleaned

from language of instrument as well as surrounding circumstances); *cf. Northrip v. Conner,* 107 N.M. 139, 754 P.2d 516 (1988) (if the deed is not ambiguous, the trial court may not go outside the deed to interpret the parties' intentions).

In some situations, the circumstances surrounding the transaction might be strong indicators of intent, but we conclude that is not the case in this appeal. The fact that the grantors wished to retain a power of termination exercisable if the property ceased to be used for airport purposes, does not give us any indication of their desires in the event that some portions of the land were needed for the airport and other portions were not. What remains for us to consider, then, is only the bare language of the condition, which, as we have already noted, must be construed to avoid forfeiture if at all possible.

The apparent recognition by the parties that the airport might not be physically located on plaintiffs' tracts cuts against a determination that the parties intended unused portions of the tracts to revert. So also does the absence of any express terms that would indicate an intent to divide the tracts, such as "part" or "portion." We hold that the evidence and deed language in this case was simply not explicit enough to overcome the strong preference for avoiding a forfeiture. *See Hyder v. Brenton,* 93 N.M. 378, 600 P.2d 830 (Ct.App. 1979) (provision that might appear to require buyer to build house or face forfeiture construed to avoid such result).

Such a construction of the language is especially appropriate in this appeal, where the city has not placed portions of the property to wholly different uses but has merely left it vacant. The broad phrase "or in connection with the maintenance or operation of an airport on adjoining lands" indicates that nonuse of a portion of the property, which lies adjacent to the airport, should not result in forfeiture. Leaving open land immediately adjacent to an airport is not incompatible with the use of the land for "airport purposes," since clearance for air traffic in the vicinity of the airport

is necessary for safety and noise abatement purposes.

Because of our resolution of this issue, we need not address the city's contention that it was actually using the entirety of the tracts for airport purposes or in connection with the maintenance and operation of the airport on adjoining lands.

CROSS–APPEAL

■ Plaintiffs expressly relinquished their reversionary rights to the entire portion of land covered by the relinquishment agreement. The relinquishment, however, was not effective for "any purposes other than airport purposes or sewage disposal plant purposes." This language in the 1961 relinquishment agreement created a new condition subsequent by retaining the 1941 reversionary rights if the land described in the agreement was used for other than airport or sewage plant purposes. As we observed in discussing the city's appeal, conditions such as those at issue in this appeal, which may result in forfeiture of property, are construed most strongly against the grantor. *Garry v. Atchison, Topeka & Santa Fe Ry.* For instance, if the condition requires forfeiture only for misuser of the property, forfeiture cannot result from mere nonuser of the land. *Berger v. Santa Fe College.*

The 1961 relinquishment retained plaintiffs' right to reversion only if the property ceased to be used for other than airport or sewage plant purposes. By the plain language of the agreement, construed strictly against plaintiffs, the right to relinquishment was not preserved for mere nonuse of portions of the property. *See Berger v. Santa Fe College* (where condition states the premises shall revert if used for any other purpose than for a Christian educational institution, failure to use the property at all does not result in forfeiture; only use for a different purpose would cause reversion).

Plaintiffs made no showing below that the city did not use the property for the specified purposes. Their only ground in support of partial reversion was that, since the sewage plant and fence did not occupy the entire piece of land subject to the relinquishment agreement, the remaining portions of the land are not being used for sewage plant purposes. Thus, plaintiffs' argument fails, and we hold the trial court properly denied their claim for reversion. *See id.*

The main thrust of plaintiffs' argument on appeal is that the trial court impermissibly based its decision concerning this issue on a memorandum submitted to the trial court by the city, but not introduced into evidence at trial. This memorandum indicated the city's future plans to expand its sewage plant and to use more of the subject tract to do so. We consider it unnecessary to address the question of whether the court's consideration of the memorandum was proper. As we have previously noted, the applicable case law and the language of the relinquishment agreement establish that partial forfeiture was not proper in these circumstances, and we base our affirmance on those grounds. *See State ex rel. State Highway Dep't v. Strosnider,* 106 N.M. 608, 747 P.2d 254 (Ct.App.1987) (trial court decision that is legally correct will not be reversed if the decision was reached for the wrong reason).

CONCLUSION

In summary, we hold that the city adequately preserved the issues involving partial reversion. We also determine that the trial court erred in allowing the airport land to partially revert to the plaintiffs due to the city's alleged nonuse of portions of the property, because the language of the condition subsequent did not evidence any intent on the part of the parties to allow such a reversion and the law in New Mexico interprets deeds so as to avoid forfeitures. We thus reverse with respect to the city's appeal. Finally, with respect to plaintiffs' cross-appeal, we affirm the trial court's disallowance of a partial reversion concerning the sewage treatment plant property. The city is awarded its costs on appeal.

IT IS SO ORDERED.

DONNELLY and CHAVEZ, JJ., concur.